40093.   MILWAUKEE INSURANCE COMPANY
v. POWELL, Administratrix.

DECIDED JUNE 14, 1963.

14

*Nelson & Nelson, Carl K. Nelson, Jr.,* for plaintiff in error.

*Joe W. Rowland, Rowland & Rowland, Emory L. Rowland, E. Hodge Rowland,* contra.

FELTON, Chief Judge. ■ The petition, as finally amended, alleged that on the date of the alleged fire loss the property was covered by a fire insurance policy with the defendant company; that the policy was in force at the time of the loss, notwithstanding the fact that the defendant's agent had previously secured a purported policy release from the insured, plaintiff's deceased husband, because the consideration for the release—the representation by the agent that the coverage under the old policy would continue in effect until a new policy would be issued with another company—failed because of the defendant's failure to issue such

new policy and its denial of liability under the original policy; that, because the policy was destroyed in the fire, the identity of the carrier was unknown to the plaintiff and her husband, and despite their diligent and thorough effort to obtain a copy of, or information about, the policy, they were unsuccessful because the owner and operator of the defendant's agency had "evaded and dodged" them.

These allegations were sufficient to set out a cause of action in the plaintiff, therefore the court did not err in overruling the general demurrer to the petition as amended.

■ Special demurrer 4 to the petition as finally amended, complains of the failure of the petition to allege the date or dates that the plaintiff and her husband attempted to see Chester. The defendant is entitled to this information in order to prove either the causes of Chester's failure to see them or that reasonable diligence was not exercised in attempting to see Chester. The court erred in overruling special demurrer 4.

■ Special demurrer 5 to the petition as finally amended attacks the failure of the petition to allege the date on which the plaintiff determined the name of the insurance carrier on the policy. This demurrer was meritorious because if such date was within the sixty-day period allowed by the policy for filing a proof of loss it would provide the defendant an affirmative defense to the action. Special demurrer 6 similarly asks for the date on which the plaintiff learned the identity of the carrier from Mr. Waller, and likewise should have been sustained.

■ Special demurrer 7 to the petition as finally amended attacks the allegation in paragraph 10 that a letter from the defendant, attached thereto as exhibit "A", denied any liability under the policy, on the ground that this allegation is contradictory to the letter and an incorrect conclusion of the plaintiff. Examination of the letter shows that it says that according to the defendant's records the policy was canceled effective April 1, 1959, and not renewed in any of its companies and that apparently it had no liability for the loss. The intent of the letter appears to be to deny liability, as alleged. Therefore this demurrer was properly overruled.

5. Special demurrer 8 to the petition as finally amended seeks

to have stricken the plaintiff's allegations as to plaintiff's husband's signing the release relying on the statements and promises of Mr. Waller, on the ground that, as a matter of law, they do not constitute any actionable fraud, misrepresentation and concealment of facts under the laws of this State. ". . . [F]raud cannot be predicated upon statements which are promissory in their nature as to future acts." *Jackson v. Brown*, 209 Ga. 78, 80 (2) (70 SE2d 756) and cases cited; *Snow's Laundry &c. Co. v. Georgia Power Co.*, 61 Ga. App. 402 (3) (6 SE2d 159). Although such allegations may be used to allege failure of the consideration of the release, they do not allege facts showing actionable fraud. Therefore special demurrer 8 should have been sustained.

■ The defendant below raised the defense that no proof of loss was ever filed as required by the policy. Compliance with a provision for 60 days' notice and proof of loss is a condition precedent to a recovery on a fire insurance policy. *Newark Fire Ins. Co. v. Reese*, 32 Ga. App. 42 (1) (123 SE 41). "In such an action, where the 'plaintiff does not plead performance of condition, but relies on waiver, estoppel, prevention of performance, or excuse in lieu of performance, he must plead it by allegations of the facts or circumstances constituting it.' 33 CJ 87, § 800 (bb)." *Security Ins. Co. v. Jackson*, 43 Ga. App. 13 (2) (158 SE 457). "Where as a condition precedent to the liability of an insurance company to the insured, the insured is required to furnish proofs of loss or perform some other act or do some other thing and this is affirmatively shown by the petition and by the exhibits attached thereto, the petition must allege either performance of such conditions precedent *or a sufficient excuse for their nonperformance* . . . [cases cited]." (Emphasis supplied.) *Harris v. Towns*, 106 Ga. App. 217, 219-20 (126 SE2d 718).

Following is a summary of the evidence relating to the failure to file a proof of loss: Mr. Wiley, the defendant's Supervising Loss Examiner for the Southeastern States, testified that his company received the policy release prior to April 23, 1959, but that it had never received a proof of loss and that the first notice of the loss it received was in a letter from Mr. Rowland, the plaintiff's attorney, dated March 11, 1960. The plaintiff testified

as follows: that she and her husband went to try to see Mr. Chester on Monday (August 31, 1959) after the house had burned on Saturday; that they came back again about lunch time the next day (Tuesday) and "he still wouldn't come out and see us"; that a girl in Mr. Chester's office told them that he was at his house "with an ear infection or something" and so he couldn't see them; that when they were informed that Mr. Chester was sick, they didn't go to his house that day, but the plaintiff's husband went there "on Sunday" without the plaintiff; that her husband came back "several times" but he "never did see him" and the plaintiff never saw him either; that finally, when she couldn't see Mr. Chester, she came and talked to Mr. Rowland about it and asked him to take it over and see what he could do about it; that the plaintiff turned a list of valuations of the destroyed contents of the house over to Mr. Rowland after she "could get no results from Chester, or see Chester to talk to him"; that after the house burned "they tell him that he didn't have any insurance, that he had signed a cancellation paper, which they didn't tell him that"; that the plaintiff had written two letters to the defendant (in March and April, 1960) to obtain information about the policy; that she learned the identity of the carrier from Mr. Waller just before writing her first letter to the defendant.

It appears from the evidence that the plaintiff's husband had almost six weeks in which to discover the identity of the carrier before his death and that the plaintiff did not obtain this information until approximately six months after the loss; they did not write Mr. Chester any letters or try to call him on the telephone or otherwise communicate with him; although the plaintiff's husband went to see him "several times," the plaintiff was not with him, hence could not testify from personal experience that Mr. Chester "wouldn't see him"; Mr. Chester was at home, sick, for a time, but there is no evidence that he was sick for the full 60 days which were provided in which to file the proof of loss; the plaintiff eventually obtained the information from the man who had obtained the release from them and there is no evidence tending to show why this information could not have been thus obtained earlier; even after the identity of the carrier was learned,

no attempt was made to file a proof of loss as required by the policy. The evidence is therefore insufficient to prove the allegation that the plaintiff and her husband made "diligent and thorough effort to obtain a copy of the policy" and that Mr. Chester had "evaded" them, hence no sufficient excuse for the nonperformance of the condition precedent was proved. Since the evidence was insufficient to sustain the verdict, the court erred in its judgment overruling the defendant's motions for a directed verdict and for a judgment notwithstanding the verdict. Under the holding in *Southern Bell Tel. &c. Co. v. Brackin*, 215 Ga. 225, 227 (2) (109 SE2d 782), the purpose of the adoption of the rule (Ga. L. 1953, Nov. Sess., p. 440; *Code Ann.* § 110-113) providing for a motion for a judgment notwithstanding the verdict, was to provide for a final disposition of the case by the appellate court where the evidence is insufficient to justify the verdict rendered on any theory, or where a judgment for the losing party in the trial court is demanded by the law; further, that, even though there be no general demurrer filed to the petition, proving a case as laid will not authorize a recovery unless the existence of the facts alleged so authorizes; that mere proof of a fact will not in law authorize a recovery unless the existence of such fact so authorizes, and that a failure to demur does not confess a cause of action either in law or in fact. Although, in the case at bar, there was a demurrer, contrary to the situation in the *Brackin* case, we are nevertheless bound by its ruling, in that although we have held the petition to have stated a cause of action good as against general demurrer but subject to special demurrers, the evidence did not show that the plaintiff and her husband exercised reasonable diligence in ascertaining the identity of the insurance carrier and consequently did not show a legal excuse for not timely filing a proof of loss, therefore we must make a final disposition of the case by directing that a judgment be entered in accordance with the motion for judgment notwithstanding the verdict. The rationale of the *Brackin* case seems to be that a motion for a judgment notwithstanding the verdict is an attack on the verdict on the ground that it is not authorized by law, whether the reason is that the pleadings or evidence or both do not authorize the

verdict. This ruling does away with the illogical and baseless rulings to the effect that a plaintiff is in all cases entitled to a verdict if he proves his case as laid, in the absence of a demurrer. At the same time it puts the world on notice that a motion for a directed verdict will be construed on motion for judgment n.o.v. to include an attack on pleadings as well as insufficiency of evidence. Under these circumstances, it is not necessary to rule on the motion for a new trial.

*Judgment reversed with direction that a judgment be entered in accordance with the motion for a judgment notwithstanding the verdict. Eberhardt and Russell, JJ., concur.*