**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1359.  PLANTATION  PIPE  LINE  COMPANY  v.  JE-064
STONEWALL INSURANCE COMPANY.

ELLINGTON, Presiding Judge.

Plantation Pipe Line Company filed this action in the Superior Court of Fulton County against five of its excess liability insurers, including Stonewall Insurance Company. Plantation and Stonewall filed cross-motions for summary judgment on the issue whether Plantation complied with a notice provision in the policy at issue. The trial court granted Stonewall's motion and denied Plantation's cross-motion. Plantation appeals, contending the trial court erred in concluding as a matter of law that it failed to give Stonewall timely notice of the occurrence at issue and thereby

forfeited coverage under the Stonewall policy.[1] For the reasons explained below, we affirm in part and reverse in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56(c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). When, as in this case, the parties file cross-motions for summary judgment, "each party must show [that] there is no genuine issue of material fact regarding the resolution of [the essential] points of inquiry and that each,

---

[1] Originally, Plantation also appealed from the ruling granting the motion for summary judgment filed by another excess insurer, First State Insurance Company, and denying its cross-motion. Plantation notified this Court that the parties had entered into a final settlement agreement, and we granted Plantation's motion to withdraw its appeal as to First State on June 17, 2015.

2

respectively, is entitled to summary judgment; either party, to prevail by summary judgment, must bear its burden of proof." *Morgan Enterprises, Inc. v. Gordon Gillett Business Realty*, 196 Ga. App. 112 (395 SE2d 303) (1990). See also *Wells Fargo Bank v. Twenty Six Properties, LLC*, 325 Ga. App. 662 (754 SE2d 630) (2014) (accord). A grant of summary judgment must be affirmed if it is right for any reason, including for an alternate ground that the trial court chose not to address in granting summary judgment, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond. *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013); *City of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002); *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001). The record shows the following undisputed facts.

The "occurrence" at issue took place on April 2, 1976, when turbine fuel was found to have leaked from a Plantation pipeline located in Cabarrus County, North Carolina. Plantation repaired the pipeline within 24 hours and compensated the only affected landowner $50 without resorting to insurance. More than thirty years later, on April 3, 2007, one of Plantation's workers found contaminated soil during maintenance of Plantation's pipeline, and the contamination was traced to the April 1976 leak. Three years later, on April 8, 2010, Plantation's claims manager, Mark

Winkler, sent written notice to Stonewall that its policy was likely to be implicated by third-party claims arising from the contamination discovered in April 2007. Stonewall denied liability, based, inter alia, on its assertion that Plantation's written notice was not "prompt" as required by the policy.

The record shows that, at the time the initial leak occurred in Cabarrus County in April 1976, Plantation, had $1,000,000 in primary coverage under a comprehensive general liability policy issued by American Reinsurance Company (subject to a self-insured retention of $100,000), and had excess coverage, including $1 million under an umbrella policy issued by Lexington Insurance Company. In late 1975, Stonewall Insurance Company[2] issued an "Excess Umbrella Liability Insurance" policy to Plantation for the period of November 30, 1975, through November 30, 1976, and agreed to indemnify Plantation for loss in excess of the limits of liability of specified underlying insurance. The declarations page shows that the excess umbrella policy was in the amount of "$1,000,000 part of $4,000,000 excess of $1,000,000 excess of underlying insurance."

A notice provision in the Stonewall policy provided:

---

[2] Berkshire Hathaway Specialty Insurance Company is Stonewall's successor.

When an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the insured to the company or its authorized agents. . . . Failure to so notify the company of any occurrence which at the time of its happening did not, in the opinion of the insured, appear to involve this policy but which, at a later date, appears to give rise to a claim hereunder shall not prejudice such claim provided notice is then given. For purposes of this policy, the word "opinion" shall mean informed opinion or opinion formed on advice of counsel.

In terms of Plantation's knowledge of the existence of the Stonewall policy, see Division 1 (b), infra, the record shows that in 2004, in connection with other litigation, Plantation hired Risk International Services, Inc. ("RIS") to reconstruct Plantation's insurance coverage for the period 1950 to 2005. Among other documents, Plantation provided RIS with an annual insurance summary that had been prepared by Plantation's legal department each year, including 1976. As one of Plantation's lawyers deposed, the company understood that "occurrence" policies should never be destroyed because such policies could continue to provide coverage for damages resulting from an occurrence during the policy period, regardless when contamination was discovered or a third-party claim was asserted against the company. Despite this, at times a policy could not be located in Plantation's files, but

5

its existence could be inferred from "secondary evidence," such as the legal department's annual insurance summary. The annual summary for 1976 showed a "first excess umbrella" layer of coverage provided by "Lexington and other companies" with a total of $5 million, excess of Plantation's comprehensive general liability coverage of $1 million (including a $100,000 self-insured retention). In 2005, a RIS consultant prepared the requested historical coverage chart for Plantation. Consistent with the 1976 annual summary, the RIS chart showed that, at the time of the original turbine fuel leak in April 1976, Plantation had a total of $5 million in coverage in excess of its primary liability coverage of $1 million; policies from "Lexington & Other Cos." accounted for $3.5 million of the excess coverage, and two other identified companies accounted for the remaining $1.5 million. According to the RIS consultant, she could not identify those companies other than Lexington accounting for the $3.5 million portion, and she did not have access to those policies.

On June 8, 2007, Plantation's remediation contractor reported to the Environmental Department the discovery of contaminated soil in April 2007, along with the contractor's analysis that the apparent source of the contamination was the turbine fuel spill from a Plantation pipe that was first discovered on April 2, 1976. By letter dated July 18, 2007, the Environmental Department demanded that Plantation

6

obtain a site assessment and remediation plan. Plantation initially proposed a corrective action plan of monitored natural attenuation, that is, a plan without active remediation measures.

In August 2007, Robert Dillard, Plantation's vice president for risk management and insurance, sent notice of the contamination found in April 2007 and of the Environmental Department's July 2007 demand for action to Plantation's primary insurer and to three of its excess carriers, including Lexington. By letters dated February 14, 2008, Dillard advised certain of Plantation's liability insurers that the company had spent $661,000 in 2007 for investigation and remediation related to the site and for defense costs, and anticipated remedial costs of $200,000 in 2008 and another $1.2 million after 2008 to implement long-term remediation. His estimate, which totaled $2.061 million, was based on Plantation's plan to utilize "monitored natural attenuation" as the permanent remedy for the site, which was the least expensive means of remediation.

By letter dated October 8, 2009, the Environmental Department advised Plantation that its proposed natural attenuation remedy "would not be considered in lieu of active remediation for soil and groundwater impacts." Plantation submitted a revised corrective action plan to the Environmental Department on February 15,

7

2010, and received informal approval of that plan in early March. Jerry Aycock, Plantation's director of remediation and emergency response, deposed that only then could Plantation develop a realistic estimate of the cost of the permanent remedy for the site, and he prepared a new remediation cost projection, dated March 18, 2010.

In February 2010, about the same time Aycock was revising Plantation's remediation cost projection in connection with the occurrence at issue in this case, Plantation's coverage counsel asked Plantation's former lawyers at the firm of Hunton & Williams to search its archives for documents related to another spill case,[3] and those lawyers discovered the Stonewall policy among other documents the firm had been holding in its archives since the early 1990s. By letter dated February 16, 2010, Plantation provided RIS with documents found in the Hunton & Williams archives, including the Stonewall policy, and asked for an updated coverage chart. The updated chart shows a total of six carriers, including Stonewall, providing a total of $4 million in coverage as a second excess layer to a first excess layer of $1 million provided by Lexington. Finally, Plantation sent Stonewall notice on April 8, 2010,

---

[3] See *Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.*, 214 Ga. App. 23 (447 SE2d 89) (1994).

that its policy was likely to be implicated, citing, not remediation costs, but third-party claims.

1. Plantation contends that, as a matter of law, its April 8, 2010 notice was reasonably prompt under the circumstances, or at least that the evidence presents a material question for the finder of fact.

Under Georgia law, "[w]hether an insured gave an insurer timely notice of an event or occurrence under a policy generally is a question for the factfinder." (Footnote omitted.) *State Farm Fire & Cas. Co. v. Walnut Ave. Partners*, 648, 651 (2) (675 SE2d 534) (2009).

> An insured often may be able to present evidence of excuse or justification for the delay. Whether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case. Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law. Conversely, if an ordinarily prudent person acting reasonably would not conclude that an incident would give rise to a possible claim, a court can determine as a matter of law that the insured was justified in not notifying the insurer of the incident.

9

(Punctuation and footnotes omitted.) Id.[4]

Whether notice to an insurer is timely under a policy depends, in part, on the event that triggers the duty of notice. In contrast to an insured's notice obligation under a primary liability policy, which may be triggered for example by an occurrence that may give rise to the insured's liability to another, under an excess policy like the one at issue, the notice obligation is triggered by the insured's assessment regarding the likelihood that the monetary amount for which the insured may be liable will exceed the ceiling of any underlying primary policy or lower tier of excess coverage. *Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.*, 214 Ga. App. at 25 (1).[5]

---

[4] See *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25 (1) (537 SE2d 165) (2000) (accord); *Townsend v. Nat. Union Fire Ins. Co.*, 196 Ga. App. 789 (397 SE2d 61) (1990) (accord); *Caldwell v. State Farm Fire & Cas. Ins.*, 192 Ga. App. 419, 420-421 (2) (385 SE2d 97) (1989) (accord); *Southern Trust Ins. Co. v. Clark*, 148 Ga. App. 579, 582 (1) (251 SE2d 823) (1978) (accord); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 220 (1), 222 (3) (231 SE2d 245) (1976) (accord).

[5] As one treatise has explained,
[t]he insured must, . . . in order to excuse late notice under the excess policy, be able to demonstrate that it would not have been possible reasonably to have anticipated that the claim or potential claim might be for an amount of money sufficient to involve excess liability. Therefore, an insured who has actual notice that a claim is for an amount in excess of the primary policy's limits is obligated to put the excess carrier on notice. If a notice provision is written so as to be activated only if it is reasonably likely that the excess policy's limits will be reached, an

(a) In arguing that its April 2010 notice was reasonably prompt under the circumstances, Plantation contends, inter alia, that it did not reasonably believe that its losses from the occurrence would likely exceed $2 million (the "attachment point" of Stonewall's policy) until early March 2010, just weeks before it provided notice to Stonewall, when it became "reasonably certain" of the scope of the corrective action plan that would receive government approval. This argument is belied by the record. As detailed above, Plantation estimated as early as February 2008, when it still apparently believed that the attachment point of all of its excess insurance

insured should be allowed to consider its potential liability in deciding whether notice is required.

(Footnotes omitted.) Allan D. Windt, 1 Insurance Claims and Disputes § 1:3 (6th ed.). See also *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. at 27-28 (1) (acknowledging that the holding in cases involving an insured's notice obligation under a primary liability policy are not controlling in a case involving an excess policy, where the notice obligation is triggered by the insured's assessment of the likelihood that the monetary amount for which it may be liable will exceed the ceiling of the primary policy); *Employer Reinsurance Corp. v. Laurier Indem. Co.*, 2007 WL 1831775 (Case No. 8:03CV1650-T-17MSS, M.D. Fla., decided June 25, 2007) ("Courts interpreting Georgia law in the context of excess insurance policies have held that there is a difference between policies which contain notice provisions triggered by the occurrence of an underlying loss and policies which contain notice provisions triggered instead by the insured's own assessment of the likelihood that the amount of the underlying loss will exceed a particular ceiling.") (citations omitted); J. Stephen Berry et al., Ga. Property & Liability Insurance Law, §§ 6:2, 6:3 (updated August 2015) (explaining that the notice provision in a typical primary commercial liability policy is triggered by the insured's actual or constructive knowledge of an occurrence giving rise to potential liability).

11

policies was $1 million,[6] that its remediation and defense costs for the contamination would exceed $2 million, even if the Environmental Department would ultimately approve the least costly permanent remedy (natural attenuation), and, it gave notice of the occurrence to certain of its excess carriers then, in February 2008.

(b) In arguing that its April 2010 notice to Stonewall was reasonably prompt under the circumstances, Plantation also contends that, despite reasonable diligence in searching for applicable policies, it was unaware of the Stonewall policy until February 2010 when it "fortuitously" discovered the policy among documents that had been in storage since the early 1990s in the archives of its former lawyers. Plantation contends that, "where an insured exercises reasonable diligence in attempting to reconstruct its insurance coverage, its failure to provide notice until a missing policy has been located or an unknown insurer has been identified should not result in a forfeiture of coverage."

Setting aside Plantation's premise that an insured's purported inability to locate an applicable policy sooner can under the right circumstances be deemed to excuse

<hr>

[6] As Stonewall points out, although the parties now agree that the attachment point of the Stonewall policy was $2 million, Plantation's 1976 annual summary and RIS's 2005 coverage chart lumped Lexington and the other excess carriers together, suggesting that the attachment point for the "other companies" was $1 million.

12

a delay in providing required notice of an occurrence,[7]

_____

[7] See *OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*, 477 Fed. Appx. 665, 672 (IV) (B) (11th Cir., 2012) (In a case where it was undisputed that an insurer's liability policies' notice provisions were expressly made conditions precedent to coverage, and the insured provided notice of an occurrence, the filing of a third-party liability claim, to its liability carrier 21 months after learning of the suit, the insured argued that the delay should be excused because it had been unable to locate the policies any earlier. Implicitly accepting the argument that an inability to locate a policy can under Georgia law constitute justification for a delay in notice, the appellate court concluded that the insurer was nonetheless entitled to summary judgment because the evidence of the insured's diligence in providing notice to the insurer, its attorney's affidavit, lacked critical detail regarding when the insured contacted its insurance agent, what the agent said, when the policy was discovered, what steps the insured took to locate other policies, when the agent told the insured about the policies at issue, and how quickly after discovering the policy the insured notified the insurer.); see also *Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784, 785-786 (2) (531 SE2d 362) (2000) ("The fact that an insured did not know the policy might afford coverage under a given factual situation may provide justification for the failure to give notice. Where there is a conflict in the evidence on the issue of the insured's lack of knowledge of coverage, a jury must determine the question." In a case where the insured gave his homeowner's insurance carrier notice that he had been involved in a fight at a party given by his wife's employer 11 months after the event but just 17 days after he received service of the woman's tort action, there was evidence that the insured knew the plaintiff had been pursuing a worker's compensation claim and that he had no idea that the suit against him might be covered under his homeowner's insurance until he was served with her suit and a lawyer he consulted advised him to notify his homeowner's insurance carrier. The insurer was not entitled to summary judgment on it late-notice defense.) (citations and punctuation omitted); *Milwaukee Ins. Co. v. Powell*, 108 Ga. App. 12, 16-19 (6) (132 SE2d 95) (1963) (In a case where the insured failed to file a written proof of loss within sixty days, which was a condition precedent to a recovery under the fire-insurance policy at issue, the plaintiff argued that her failure to comply with the provision was justified because the policy had been destroyed in the fire and the insurance agent evaded inquiries about the policy and she had been unable to identify

13

the carrier any earlier. Implicitly accepting the argument that an inability to locate a policy can constitute justification for a failure to file a written proof of loss, the appellate court concluded that the insurer was nonetheless entitled to judgment as a matter of law, inter alia, because there was no evidence explaining why the information that the plaintiff eventually received could not have been obtained earlier in the same way and, even after the identity of the carrier was learned, the plaintiff did not attempt to file a proof of loss as required by the policy.). But see *Protective Insurance Company v. Johnson*, 256 Ga. 713, 713-714 (1) (352 SE2d 760) (1987) (Where a claimant argued that his 17-month delay in filing a claim with his employer's insurer should be excused, inter alia, because he did not know the name of his employer's insurer and he was unaware that his employer had insurance on the truck in which he was injured, the insurer was entitled to summary judgment because "[t]here [was] no evidence, indeed, not even an assertion, that [the claimant's] ignorance of the terms of the subject insurance policy was due to any fraud or overreaching on the part of [the insurer] or its agents" and "[t]he law requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract.") (citation and punctuation omitted); *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-317 (1) (562 SE2d 267) (2002) (The fact that the insureds did not know their auto policy might afford coverage for theft of the vehicle as a matter of law did not excuse their delay in giving timely notice of the occurrence.); *Townsend v. Nat. Union Fire Ins. Co.*, 196 Ga. App. at 789-790 (The claimant's 70-month delay in notifying his employer's insurance carrier of his injury while driving the truck was unreasonable as a matter of law and was not excused by his being unaware that he might be entitled to no-fault benefits and his not knowing the name of the carrier that insured his employer's truck.); *Snow v. Atlanta Intl. Ins. Co.*, 182 Ga. App. 1, 2 (354 SE2d 644) (1987) (The insured's delay in notifying one of two insurers of his trucking activities about an accident that resulted in another's death was unexcused as a matter of law, although he claimed he did not know what company or companies carried the insurance, because his employment contracts provided that the trucking companies would provide insurance and he failed to inquire as to the requirements of any insurance policy.); *Buffalo Insurance Company v. Star Photo Finishing Company*, 120 Ga. App. 697, 706-707 (3) (172 SE2d 159) (1969) (Where an insured argued that its failure to provide its insurer with a written proof of loss as required by the policy should be excused because the insured did not have a copy of the policy,

14

we conclude that under the circumstances presented here Plantation failed as a matter of law to give Stonewall timely notice of the occurrence at issue. As detailed above, Plantation's executives and lawyers understood that contamination attributable to its business activities could be discovered decades after a leak and that, consequently, occurrence policies should never be destroyed. Its annual insurance summaries dating back to the original leak in April 1976 referred to "other" excess carriers that provided a total of $5 million in coverage. And, when Plantation pressed the Hunton & Williams firm to search its archives in February 2010, the Stonewall policy was discovered; there is no evidence that the policy could not have been thus discovered any earlier. We conclude that the record fails to present a material question of fact regarding whether Plantation's notice to Stonewall, more than two years after Plantation determined that its liability exposure would likely exceed the ceiling of the underlying policies, was reasonably prompt under the circumstances.[8] Accordingly,

the insurer was entitled to summary judgment because "[i]f the policy was lost or destroyed it was by [the insured's] negligence and through no fault of [the insurer].").

[8] *Protective Insurance Company v. Johnson*, 256 Ga. at 713-714 (1) (unexcused delay of 17 months in giving required notice precluded coverage); *Allstate Ins. Co. v. Walker*, 254 Ga. App. at 316-317 (1) (unexcused delay of 11 months in giving required notice precluded coverage); *Snow v. Atlanta Intl. Ins. Co.*, 182 Ga. App. at 2 (unexcused delay of 10 months in giving required notice precluded coverage); see also *OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*,

15

the trial court did not err in concluding as a matter of law that Plantation failed to give Stonewall timely notice of the occurrence at issue.[9]

2. Plantation contends that, even if it failed to provide Stonewall reasonably prompt notice of the claim, as we have held in Division 1, supra, such failure does not negate coverage under the policy, because the policy did not expressly make prompt notice a condition precedent to coverage and because Stonewall was not prejudiced by the delay in notice.

---

477 Fed. Appx. at 672 (IV) (B) (unexcused delay of 21 months in giving required notice precluded coverage).

[9] Cf. *Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.*, 214 Ga. App. at 24-26 (1) (The insured's notice of an occurrence to its excess carrier was timely as a matter of law, where it provided notice within days of a demand from the North Carolina Department of Environmental Health and Natural Resources to carry out a remedial action plan for contamination traced to a leak fifteen years earlier, and where during that interval the insured had expended less than 0.7 percent of the excess carrier's floor of coverage of $3 million in remediating the site and compensating the affected property owner; under the circumstances, it was objectively unlikely, before the Environmental Department's demand, that the excess insurer's policy would become involved.); *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F3d 852, 862 (II) (B) (11th Cir. 1997) (applying Georgia and Wisconsin law) (The insured's notice was timely as a matter of law where the insured evaluated the claim based upon advice from competent attorneys representing both itself and other excess insurers and none believed that the claims at issue might exceed the threshold of coverage.).

Under Georgia law, an insurance policy is construed, if possible, to avoid forfeitures and to provide coverage, so as to advance the beneficial purposes intended to be accomplished by the insurance contract. *Grange Mut. Cas. Co. v. Snipes*, 298 Ga. App. 405, 408 (2) (680 SE2d 438) (2009); *Gilbert v. Southern Trust Ins. Co.*, 252 Ga. App. 109, 112 (2) (555 SE2d 69) (2001). See also *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407 (3) (730 SE2d 413) (2012) ("Georgia courts do not favor forfeitures in construing insurance contracts.") (citation and punctuation omitted). The ordinary principle of contract law, that a party seeking to recover under a contract must perform any applicable condition precedent before the contract becomes absolute and obligatory upon the other party,[10] applies to contracts of insurance. *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. 12, 14 (703 SE2d 436) (2010); *Blackburn v. State Farm Fire & Cas. Co.*, 174 Ga. App. 157, 158 (329 SE2d 284) (1985). Therefore, a forfeiture of insurance coverage may result when an insured fails to satisfy a condition precedent to coverage under the contract.

Pertinently to this case, a notice provision in an insurance contract that is

---

[10] *Glass v. Stewart Title Guaranty Co.*, 181 Ga. App. 804, 805 (1) (354 SE2d 187) (1987) ("In the case of a condition precedent, the condition must be performed before the contract becomes absolute and obligatory upon the other party.") (citations and punctuation omitted).

17

expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification. Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, then the insurer is not obligated to provide either a defense or coverage.

(Citation and punctuation omitted.) *Eells v. State Farm Mut. Auto. Ins. Co.*, 324 Ga. App. 901, 903 (1) (a) (752 SE2d 70) (2013).[11] Furthermore, when specified notice is a valid condition precedent to coverage, an insurer is not required to show actual harm from a delay in notice in order to justify a denial of coverage based on such

---

[11] See *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. at 14 (accord); *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. at 488 (1) (a) (accord); *Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga. App. 1, 3 (627 SE2d 917) (2006) (accord); *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. at 28 (2) (accord); see also *Parris v. Great Central Ins. Co.*, 148 Ga. App. 277, 278 (1) (251 SE2d 109) (1978) (An insured was not precluded from maintaining suit against its insurer and consequently recovering under the policy, solely by reason of failing to submit a proof of loss within the time required by the policy, because the policy contained no express stipulation to the effect that failure to submit a proof of loss within the time allowed would result in forfeiture, nor was there an express stipulation in the policy that furnishing a proof of loss within the time specified was a condition precedent to the bringing of an action against the insurer.); *OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*, 477 Fed. Appx. at 672 (IV) (B) (11th Cir., 2012) (Under Georgia law, if a notice provision is expressly made a condition precedent to coverage under the policy at issue, and the insured unreasonably and without justification fails to comply with the notice provision in a timely manner, the insurer is not obligated to provide either a defense or coverage.).

failure of a condition precedent.[12] It follows that, conversely, where a notice provision is *not* expressly made a condition precedent to coverage of the insurance contract, an insured's failure to comply with the notice provision will result in a forfeiture of coverage only if the insurer demonstrates that it was prejudiced by the insured's failure.[13]

---

[12] *Southeastern Express Systems, Inc. v. Southern Guar. Ins. Co.*, 224 Ga. App. 697, 701 (482 SE2d 433) (1997) (The insurer was not required to show it was prejudiced by the insured's failure to give notice, in a timely and reasonable manner, that it had been sued and to deliver the suit papers to the insurer as required by the contract because "the notice requirement was a condition precedent under the policy.") (citations omitted); *Caldwell v. State Farm Fire & Cas. Ins.*, 192 Ga. App. at 421 (2) (accord); *Diggs v. Southern Ins. Co.*, 172 Ga. App. 37, 38 (321 SE2d 792) (1984) (accord); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. at 222 (3) (Because the notice requirement was expressly made a condition precedent to the insurer's coverage or liability, there was no need for the insurer to prove it was prejudiced by the insured's failure to give timely notice.); *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 561-562 (3) (177 SE2d 819) (1970) (accord).

[13] See *JNJ Foundation Specialists, Inc. v. D. R. Horton, Inc.*, 311 Ga. App. 269, 275-276 (2) (b) (717 SE2d 219) (2011) (Although an insurer is "not required to show prejudice resulting from an alleged failure to forward suit papers timely, the insurer's failure to demonstrate prejudice may be considered" in determining whether the insured breached the contract by failing to immediately forward to the insurer copies of a lawsuit; the insurer was not entitled to summary judgment on its late-notice defense where there was no evidence that it did not receive notice when its insured received notice.) (footnote omitted); *Continental Cas. Co. v. Parker*, 161 Ga. App. 614, 617-618 (2) (288 SE2d 776) (1982) (Where the insured gave oral notice to his insurance agent and was informed that he was not covered, and there was no evidence of any prejudice to the insurer in defending the case because of the insured's failure to give written notice or forward the pleadings in the case, the insurer was not entitled

19

In keeping with the desire of the law to avoid forfeitures of coverage, the general rule is that a notice provision in an insurance policy is only considered a

to summary judgment on its late-notice defense.); *Leventhal v. American Banker Ins. Co.*, 159 Ga. App. 104, 108 (283 Ga. App. 3) (1981) (Where an action against an employer as named insured is based on the alleged negligence of an employee also covered by the policy, the employee "does not forfeit coverage by failure to make an immediate forwarding of suit papers if the circumstances show (1) that the insurer has in fact received timely notice of the accident, the claim and pendency of the suit from the named insured; (2) the defense of the named insured involves, at least collaterally, a defense of the employee insured as against a charge of respondeat superior, and (3) the insurer fails to carry the burden of showing that its defense was prejudiced in any manner by the failure of the employee to make a timely forwarding of suit papers."). We note that in at least one case we rejected prejudice to the insurer as a factor without expressly limiting that holding to circumstances where timely notice is expressly made a condition precedent to coverage, and that ruling has been broadly paraphrased in some federal court decisions. See *Townsend v. Nat. Union Fire Ins. Co.*, 196 Ga. App. at 789-790 ("Prejudice or the lack thereof to the insurer is not a factor in assessing whether or not the delay in notice is excusable and the ultimate determination of its being reasonable, i.e., 'as soon as practicable.'") (citations and punctuation omitted); see e.g., *Canadyne-Georgia Corp. v. Continental Ins. Co.*, 999 F2d 1547, 1557 (11th Cir. 1993) ("The Georgia Court of Appeals repeatedly confirms the rule in Georgia that an insurer need not prove prejudice in order to avoid paying benefits to the insured who fails to comply with the notice provision in the policy.") (citing *Townsend v. Nat. Union Fire Ins. Co.*). The Eleventh Circuit Court of Appeals' interpretation of Georgia law has been questioned, however, given that *Townsend v. Nat. Union Fire Ins. Co.* "provides very little support in view of the fact that the policy language is not set out, and the court does not specifically state whether the notice requirement was a mere 'condition' or a 'condition precedent.'" *Atlanta Gas Light Co. v. Aetna Cas. & Sur.*, Case No. CIV.A.1:91-CV1803RLV, 1993 WL 545704 (N. D. Ga., decided October 8, 1993), vacated sub nom. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F3d 409 (11th Cir. 1995). We decline to follow the Eleventh Circuit Court of Appeals' overly broad reading of *Townsend v. Nat. Union Fire Ins. Co.*

20

condition precedent to coverage if "it expressly states that a failure to provide such notice will result in a forfeiture of the insured's rights or uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent."*Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 726-727 (1) (698 SE2d 19) (2010). Where policy language "does nothing more than require the insured to give notice of a particular event, [it] is insufficient to create a condition precedent.") (citations and punctuation omitted). Id. at 727 (1).

The notice provision in the Stonewall policy at issue, quoted above, does not expressly stipulate that compliance with the notice provision is a condition precedent to coverage. See *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. at 726-727 (1). In addition, the policy does not even contain a general provision that no action will lie against Stonewall unless, as a condition precedent thereto, Plantation shall have fully complied with all terms of the policy. See id.[14] In arguing that the required notice is a condition precedent to coverage, Stonewall points to language contained on the

---

[14] Cf. *Bituminous Casualty Corp v. J. B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 716-718 (1) (209 SE2d 6) (1974) (citing "condition precedent" language in a no-action clause and concluding that timely notice was a condition precedent to coverage); *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. at 560 (3) (accord); *OneBeacon American Ins. Co. v. Catholic Diocese of Savannah*, 477 Fed. Appx. 665, 668 (11th Cir. 2012) (applying Georgia law) (accord).

21

declarations page to the effect that Stonewall "agrees with [Plantation], in consideration of the premium to be paid and subject to the limits of liability, exclusions, conditions, and other terms of this policy, to provide insurance" as set forth in the attached forms and endorsements. We conclude that this general, introductory language was insufficient to make compliance with the notice provision a condition precedent to coverage. See *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. at 727 (1). Accordingly, the trial court erred in concluding that the Stonewall policy expressly made compliance with the notice provision a condition precedent to coverage and in ruling on that basis that Stonewall was not required to show prejudice.

Stonewall contends that it was prejudiced by Plantation's delayed notice in that "Plantation unilaterally investigated the Site and initially submitted a remedy that was ultimately rejected in favor of a far more expensive cleanup that Stonewall is now being asked to fund."[15] Contrary to what is stated in the dissent, we recognize that

[15] See *Hathaway Dev. Co., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65, 68 686 SE2d 855, 860 (1) (b) (2009), aff'd, 288 Ga. 749 (707 SE2d 369) (2011) (In regard to a primary liability carrier, "[t]he purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.") (citations and punctuation omitted); *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. at

excess carriers, like primary carriers, are entitled to "timely" investigate claims for which they may ultimately be held liable. But the dissent fails to acknowledge that, as explained in *Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.*, 214 Ga. App. at 25 (1), and reaffirmed in *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. at 27-28 (1), an insurer's notice obligation under an excess policy is triggered by a different event (that is, the insured's assessment regarding the likelihood that its exposure will exceed the ceiling of the underlying primary policy) than triggers its notice obligation under a primary policy, most commonly, the insured's actual or constructive knowledge of an occurrence giving rise to potential liability.[16] The

_____

27 (1) (In regard to a primary liability carrier, "[t]he purpose of a notice provision in a policy of insurance is to allow the insurer to investigate promptly the facts surrounding the occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts are still fresh and the witnesses are still available.") (citation and punctuation omitted); *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. at 221 (3) (accord); *Bituminous Casualty Corp v. J. B. Forrest & Sons, Inc.*, 132 Ga. App. at 717 (1) (In regard to a primary liability carrier, the purpose of a notice provision is "to enable the insurer to begin immediately an investigation of the facts and circumstances for determining whether liability might be present and whether a settlement of the claim should be attempted; to get the facts while they were fresh and available in the minds of the parties and such witnesses as might be available; to obtain pictures, diagrams, etc. which might assist in showing how the occurrence happened and the extent of any physical damage done." With the passage of time, witnesses may disappear by moving away, or the status of damaged property may be changed.).

[16] See discussion in Division 1, supra.

events that trigger an obligation to provide notice to a primary carrier and to an excess carrier may occur simultaneously or, at the other extreme, may be separated by many decades, as has been repeatedly illustrated in petroleum spill cases. Thus, although an excess carrier is entitled to investigate a claim "timely," relative to the trigger date of the insured's notice obligation, it will not necessarily be entitled to an opportunity to investigate in the early days following an occurrence that gives rise to an insured's potential liability, as a primary carrier may be.[17] This reality affects the ways in which a delay in notice may harm an excess insurer, and, therefore, it must inform the application of precedents involving primary insurers in cases, like this one, that involve excess insurers.

---

[17] As the Eleventh Circuit Court of Appeals explained, notice to an excess carrier

> is required only when it is "reasonably likely" that the claim will be found to have a value in excess of the primary insurance limits. "Reasonable" to whom? The insured's appraisal will have to control unless, as a matter of law, it is unreasonable. *The fact is that excess carriers are not interested in receiving notice of every claim against their insureds.* The excess insurer does not undertake to defend the insured. Consequently, *the excess insurer is not interested in every accident, but only in those serious enough to involve it.* Excess policies, therefore, usually require an assured to give notice of claims that appear "likely to involve" the excess.

(Emphasis supplied.) *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F3d 852, 860 (II) (B) (11th Cir. 1997) (applying Georgia and Wisconsin law).

Given that an excess insurer will often be entitled to notice at a later time than a primary carrier would be, and an initial investigation may already be under way, the bare assertion that Stonewall was deprived of an opportunity to investigate is insufficient to carry its burden on summary judgment of showing prejudice as a matter of law. Moreover, it seems doubtful that Stonewall was harmed by Plantation's having proposed a remedy that, if accepted by the North Carolina Department of Environmental Health and Natural Resources (the "Environmental Department"), could have reduced or even eliminated Stonewall's exposure as an excess insurer for the contamination discovered in April 2007. On the record that was before the trial court, we conclude that Stonewall failed to identify evidence establishing that as a matter of law it was prejudiced by Plantation's failure to provide reasonably prompt notice of the occurrence. Because of this, and because the policy did not expressly make prompt notice a condition precedent to coverage, Plantation's delay in notice, as discussed in Division 1, supra, does not as a matter of law preclude coverage under the policy.

Based on all the foregoing, we conclude that the trial did not err in denying Plantation's motion for summary judgment but erred in granting Stonewall's cross-motion.

The assertion in the dissent that our decision in this case renders every timely notice provision in every excess-liability policy in Georgia utterly meaningless cannot go unanswered. Therefore, we take pains to emphasize that we are certainly *not* suggesting that excess carriers are *never* entitled to timely notice and are *never* prejudiced by untimely notice on the basis that their liability may not arise until well after the original occurrence giving rise to the claim, and this case should not be cited as so holding. A more than two-year delay in giving notice may very well prejudice an excess carrier. Indeed, Stonewall may yet be able to establish prejudice *in this case* – but it must do so with particularized *evidence* of harm. An assertion by counsel in a brief will not suffice, nor are we authorized to presume that a delay of over two years is inherently prejudicial.

*Judgment affirmed in part, reversed in part. Barnes, P. J., Phipps, P. J., and McFadden, J., concur. Ray, J., concurs in judgment only. Dillard and McMillian, JJ., concur in judgment only in Division 1 and dissent in Division 2.*

A15A1359. PLANTATION PIPE LINE COMPANY v. STONEWALL INSURANCE COMPANY.

DILLARD, Judge, concurring in part and dissenting in part.

I concur in judgment only as to Division 1 because I do not agree with all that is said by the majority in that particular division of the opinion. And for the reasons that follow, I respectfully dissent as to Division 2 because the trial court did not err in granting summary judgment to Stonewall.

As noted by the majority, Plantation failed to notify Stonewall of its potential liability for over *two years* and its sole excuse for this lengthy delay is that it was unaware that the insurance policy existed until 2010, when the policy was discovered among other documents provided by its former attorneys. Suffice it to say, this excuse is a nonstarter. Indeed, Georgia courts have long held that mere ignorance of the existence of an insurance policy or its terms does not excuse an insured from complying with a timely notice provision.[1] And this makes perfect sense because

---

[1] *See Protective Ins. Co. v. Johnson*, 256 Ga. 713, 714 (1) (352 SE2d 760) (1987) (holding that the insured's 17-month delay in notifying his insurer of a claim was unreasonable as a matter of law when the insured's reasons for the delay were that he thought his employer would file the claim, he did not know the name of the employer's insurer, and he thought the vehicle at issue was uninsured); *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-17 (1) (562 SE2d 267) (2002) (holding that the

holding otherwise would mean that any insured could be excused from complying with the terms of an insurance policy merely by claiming (or feigning) ignorance of the policy's existence or its terms. It is eminently reasonable, then, for an insurance company to presume that an insured is aware of the insurance policy's existence as well as its terms.

Nevertheless, the majority holds that, even though Plantation's 26-month delay in providing notice to Stonewall of its potential liability was unreasonable and

---

insurance company was entitled to summary judgment when the plaintiffs did not notify the company of the loss for almost a year because they were unaware that their policy might afford coverage for theft and there was no evidence that their "ignorance of the terms of the subject insurance policy was due to any fraud or overreaching on the part of the insurer or its agents" (punctuation omitted)); *Townsend v. Nat'l Union Fire Ins. Co.*, 196 Ga. App. 789, 789 (397 SE2d 61) (1990) (holding that the insured's 70-month delay in notifying his car insurance carrier of his claim was unreasonable as a matter of law when his only excuse was that he was unaware that he was entitled to benefits and he did not know the name of the carrier insuring his truck); *Snow v. Atlanta Int'l Ins. Co.*, 182 Ga. App. 1, 1-2 (354 SE2d 644) (1987) (holding that a 10-month delay in providing notice to an insurance company of a claim was unexcused and unreasonable as a matter of law when the insured was aware that he was insured through some policy but claimed that he did not know what company or companies carried his insurance); *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 120 Ga. App. 697, 706-07 (3) (172 SE2d 159) (1969) (holding that insured's excuse for delayed notice—that the insurance policy was not in his possession—was insufficient as a matter of law and explaining that "[i]f the policy was lost or destroyed it was by [the insured's] negligence and through no fault of [the insurer], [the insurer] could, as it apparently did, assume that [the insured] had the policy and was familiar with its provisions).

2

unjustifiable as a matter of law, Plantation may still be excused for its complete failure to comply with the timely notice provision because it was not an express condition precedent to coverage and Stonewall has not shown that it was prejudiced. I respectfully disagree.

Assuming, *arguendo*, that (1) the policy's timely notice provision is not an express condition precedent to coverage[2] and (2) the law actually requires Stonewall to demonstrate that it was prejudiced by Plantation's failure to comply with this provision, it is ultimately of no consequence because Stonewall has easily shown that it was in fact prejudiced. It simply strains credulity to suggest, as the majority does, that Stonewall's "bare assertion" that it was deprived of the opportunity to timely investigate Plantation's claim is insufficient to show prejudice, while at the same time acknowledging that the ability to investigate claims in a timely manner is the very purpose of a timely notice provision.[3] To the contrary, an insured's failure to provide

---

[2] *See Roberson v. Leone*, 315 Ga. App. 459, 462 (726 SE2d 565) (2012) ("In Georgia, insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." (punctuation omitted); *accord Turner v. Gateway Ins. Co.*, 290 Ga. App. 737, 739 (660 SE2d 484) (2008).

[3] *See Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 27 (1) (537 SE2d 165) (2000) (explaining that "[t]he purpose of a notice provision in a policy of coverage is to allow the insurer to investigate *promptly* the facts surrounding the

3

its insurer with timely notice of the insurer's potential liability under the policy will, in many cases, prejudice the insurer's rights under the policy.[4] This is especially true in this case, where Plantation failed to notify Stonewall of its potential liability under the policy for *over two years*—which, in my view, is inherently prejudicial. Moreover, as Stonewall explains in its appellate brief, Plantation's inexcusable delay in notifying Stonewall of its potential liability deprived the company of its ability to "associate into defense decisions." Specifically, Plantation "unilaterally investigated the Site and initially submitted a remedy that was ultimately rejected in favor of a far more expensive cleanup that Stonewall is now being asked to fund." This is prejudice, plain and simple.

In holding that Stonewall has failed to show prejudice, the majority makes much of the fact that primary insurance carriers are often entitled to notice of their potential liability much earlier than excess liability carriers. This is, of course, true, but entirely beside the point. The bottom line is that, regardless of when the triggering

---

occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts 'are still fresh and the witnesses are still available.'") (emphasis supplied) (citation omitted); *accord Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221 (3) (231 SE2d 245) (1976); *Bitminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 717 (1) (209 SE2d 6) (1974).

[4] *See supra* footnote 3.

event occurs, an insurer—be it a primary or excess insurance carrier—is entitled to timely notice of its potential liability if the policy so provides.[5] And the majority concedes as much in Division 1 (a) of its opinion, expressly holding that Plantation's contention that its notice was reasonably prompt was belied by the record. Nevertheless, in Division 3 of its opinion, the majority inexplicably suggests that excess carriers are *never* entitled to timely notice and are *never* prejudiced by untimely notice because their liability may not arise until well after the original occurrence giving rise to the claim—a holding that renders every timely notice provision in every excess-liability policy in Georgia utterly meaningless. This is not the law in Georgia. Although an excess carrier *may* not be able to investigate the actual occurrence or accident giving rise to the claim as early as a primary carrier, an

---

[5] *See Kerr v. Ill. Cent. R.R. Co.,* 670 NE2d 759, 765 (Ill. App. 1996) (holding that "[a]n excess insurer should not be forced to rely on its insured or the primary insurer to protect its interests where timely notice would provide the excess insurer with an opportunity to pursue its own investigation"); *Am. Home Assurance Co. v. Int'l Ins. Co.,* 684 NE2d 14, 17 (N.Y. App. 1997) (noting that "the important function of prompt notice in furnishing even an excess carrier with an opportunity to participate in settlement discussions at a time when its input is most likely to be meaningful"); Douglas R. Richmond, *Rights and Responsibilities of Excess Insurers,* 78 Denv. U. L. Rev. 29, 44-45 (2000) (concluding that an excess insurer should not be compelled to rely upon the insured to protect its interests and that excess insurers "need an option to defend in order to protect themselves in cases where . . . the primary insurer is not mounting a strong defense").

5

excess carrier is nonetheless entitled to timely investigate whether the loss is such that it is even liable under the terms of its policy.

Here, it is undisputed that the triggering event occurred in February 2008 and that Plantation's excuse for the *late notice* was unjustified and unreasonable. And nothing in this dissent remotely suggests that the timely notice provision in Stonewall's policy was triggered in 1976 at the time of the original oil leak. As a result, I fail to see how the difference between when the triggering events occur for primary and excess liability carriers has any bearing on the outcome of this appeal.

In sum, if the purpose of a timely notice provision in an excess-liability policy is not to allow the insurer to expeditiously investigate and defend against claims of potential liability, then it is not entirely clear what the purpose of such a provision would be. Simply put, Stonewall was undoubtedly prejudiced when Plantation failed to give it notice of its potential liability for *over two years* after the claim arose.[6] I

---

[6] *Hathaway Dev. Co. v. Am. Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65, 68 (1) (b) (686 SE2d 855) (2009) ("The purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.") (punctuation omitted); *Plantation Pipeline Co.*, 245 Ga. App. at 27 (1) ("The purpose of a notice provision in a policy of insurance is to allow the insurer to investigate promptly the facts surrounding the occurrence and to prepare a defense or determine whether a settlement is feasible, while the facts "are still fresh and the witnesses are still available.")

respectfully dissent, then, from Division 2 of the majority opinion because I would affirm the trial court's grant of summary judgment to Stonewall.

I am authorized to state that Judge McMillian joins in this opinion.