A99A2021. MANZI v. COTTON STATES MUTUAL INSURANCE COMPANY.
(531 SE2d 164)

RUFFIN, Judge.

On April 18, 1997, Lisa Manzi was injured in an automobile collision. She sued Wendell Kistler, who she claimed was driving the truck in which she was a passenger.[1] On November 3, 1997, she served Cotton States Mutual Insurance Company, her uninsured motorist carrier.[2] Cotton States moved for summary judgment, arguing that it had no liability under the policy because Manzi failed to notify it of the accident in a timely manner. The trial court granted the motion, and Manzi appeals. For reasons discussed below, we affirm.

Section IV of the insurance policy, entitled "DUTIES AFTER AN ACCIDENT OR LOSS," provides in relevant part as follows:

We must be notified promptly, but in no event later than 60 days, of how, when and where the accident or loss happened. Notice should also include the names and addresses of any

[1] In his answer, Kistler claimed that Manzi was the one driving the truck and that he was the passenger.

[2] Manzi's father, Billy Adams, is the named insured under the policy. Manzi claims that she was a member of Adams' household at the time of the accident and thus an additional insured under the policy. For purposes of this appeal, we assume that Manzi is an additional insured under the policy.

injured persons and of any witnesses. Receipt of such notice by the company or any of its authorized agents shall be a condition precedent to the existence of any coverage under this policy and of the company's obligation to defend any claim under this policy.

This notice provision is applicable to all claims under the policy, including uninsured motorist claims.

It is undisputed that Cotton States was not notified of the accident until November 3, 1997, when it was served with Manzi's complaint. Although this was more than 60 days after the accident, Manzi contends that the notice provision is ambiguous because it does not state that the 60-day period begins on the date of the accident. She argues that, with respect to uninsured motorist claims, the 60-day period should not begin until it is discovered that the defendant is uninsured. Cotton States, on the other hand, argues that the policy unambiguously requires notice to be given within 60 days after the accident or loss.

Manzi relies primarily on *Gregory v. Allstate Ins. Co.,*[3] where the policy contained a provision requiring that notice of an accident or loss be given " 'as soon as practicable.' "[4] The policy did not, however, state that compliance with the notice provision was a condition precedent to the insurer's obligations thereunder. We held that "where failure to [give notice as soon as practicable] is not made the breach of a condition precedent, the real defense must be based on the issue of whether the insurer has been prejudiced by delay."[5] We then stated that:

[t]he uninsured motorist endorsement becomes operative, not when there has been an accident, but when it is ascertained that the operator was uninsured. Where the uninsured motorist endorsement provides for notice as soon as practicable, this should be interpreted as if it read as soon as practicable after discovery of the uninsured status, and means within a reasonable time under all of the circumstances if the insured was reasonably diligent in his efforts to determine the insurance status of his adversary.[6]

Manzi argues that *Gregory* requires us to construe the notice provision, with respect to uninsured motorist claims, to require notice

---

[3] 134 Ga. App. 461 (214 SE2d 696) (1975).
[4] Id. at 464.
[5] Id.
[6] (Punctuation omitted.) Id.

"promptly, but in no event later than 60 days, *after discovery of the uninsured status*."

Cotton States, on the other hand, relies on *Cotton States Mut. Ins. Co. v. Hipps*,[7] in which we construed this same policy provision to be unambiguous. The insured's son in that case was involved in a collision. Although the insured sued the other individuals involved, he did not notify his own insurer, Cotton States, until a year after the accident, after the other individuals had filed counterclaims for personal injury and property damage. In holding that Cotton States was entitled to summary judgment on the issue of coverage, we noted that:

> [t]he condition precedent in this case requires 60 days notice *after the covered event*. It is immaterial to enforcement of this condition precedent that [the insured] thought those other drivers were the cause of the collision and would be liable for his damages and theirs. . . . The language of this policy is unambiguous. . . . It unambiguously requires that notice of the covered event and its particulars be received by Cotton States *within 60 days of the event*, as a *condition precedent* to coverage of the event. This requirement upon the insured is not dependent on . . . the existence of any insurance held by any other parties; and the insured's beliefs or misunderstandings about who was liable for this collision did not relieve him of the plain duty to which he agreed and induced Cotton States to issue this policy.[8]

The issue in *Hipps*, however, was not when the 60-day notice period began, but whether notice was required at all. Nevertheless, we believe that the construction given the provision in *Hipps* is the correct one.

In general, the interpretation of contractual language is a question of law for the court, unless it is so ambiguous that the ambiguity cannot be resolved by the ordinary rules of construction.[9] As the Supreme Court has noted,

> [a]n insurance contract is governed by the ordinary rules of construction and should be construed to ascertain the intention of the parties. In discovering the intent of the parties, the whole instrument should be considered together, along

---

[7] 224 Ga. App. 756 (481 SE2d 876) (1997).
[8] (Emphasis in original and supplied.) Id. at 756-757.
[9] *Smith v. Allen*, 180 Ga. App. 624, 626 (1) (349 SE2d 548) (1986).

with the surrounding circumstances.[10]

Moreover, while ambiguities in insurance contracts are to be construed against the insurer, we are not to

> call forth doubt or make hypercritical constructions. The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. The language of the contract in its entirety should be given a reasonable construction, not beyond that fairly intended within its terms.[11]

Although the policy does not expressly state that the 60-day period begins on the date of the accident or loss, that is clearly implied in the policy language, which requires prompt notice of "how, when and where the accident or loss happened."[12] The "natural, obvious meaning" of this language is that the occurrence of the accident or loss triggers the requirement to provide notice. Even if *Hipps* is not binding precedent on this point, its reasoning is sound and underscores the fact that we are to look for the natural and obvious meaning of contractual language, even in the context of an insurance contract.

As discussed above, the notice provision applies to all claims made under the policy, not just to uninsured motorist claims. Accepting Manzi's construction would require us to give the same language different meanings, depending upon whether or not the claim is one for uninsured motorist coverage. Nothing in the policy, however, suggests that the parties intended the language to mean different things in different situations. Indeed, the purpose of a notice provision is not simply to inform the insurer that a claim is being made under the policy, but to notify the insurer of the occurrence of a potentially covered event. As the Supreme Court has noted, in the context of uninsured motorist coverage,

> [t]he purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may inves-

---

[10] (Citations omitted.) *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992).

[11] (Citations omitted.) *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579, 583 (1) (168 SE2d 171) (1969). See also *Maddox v. Life & Cas. Ins. Co. &c.*, 79 Ga. App. 164, 174 (3) (53 SE2d 235) (1949).

[12] See *Myers v. Texaco Refining &c.*, 205 Ga. App. 292, 299 (422 SE2d 216) (1992) (provision is enforceable even if "interpretation is required or . . . an obvious inference must be made from plain and unambiguous language").

tigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.[13]

These considerations apply regardless of whether the insured believes that other insurance is available. To interpret the provision as Manzi suggests would allow an insured to delay notifying the insurer for months or even years, so long as the insured thought that other insurance existed to cover the loss. Such an interpretation is contrary to the obvious intent of the policy, which is to require notice promptly after the occurrence of a covered event.[14]

It is undisputed that Manzi did not notify Cotton States of the occurrence of the accident until November 3, 1997, more than six months after the accident. Unlike in *Gregory*, compliance with the notice provision is expressly made "a condition precedent to the existence of any coverage under this policy and of the company's obligation to defend any claim under this policy."[15] Although Manzi argues that the notice provision violates public policy because it restricts coverage under the uninsured motorist endorsement, we have previously rejected this argument.[16] And although Manzi contends that Cotton States waived compliance by asserting in its answer that Kistler was adequately insured, we do not see how such an assertion is inconsistent with its defense that Manzi failed to satisfy a condition precedent for coverage, particularly since it raised such a defense in its answer.[17] Accordingly, the trial court did not err in granting Cotton States' motion for summary judgment.[18]

*Judgment affirmed. Andrews, P. J., concurs. Ellington, J., concurs in the judgment only.*

---

[13] (Punctuation omitted.) *Kitt v. Shield Ins. Co.*, 240 Ga. 619, 621 (241 SE2d 824) (1978).

[14] We note that an insured's contractual duty to notify her insurer of the occurrence of a covered event is different from the insured's duty to serve her uninsured motorist carrier with a copy of her complaint against an uninsured defendant. Under OCGA § 33-7-11 (d), as amended effective July 1, 1998, the plaintiff is required to serve the uninsured motorist carrier only where "a reasonable belief" exists that the vehicle is an uninsured motor vehicle. See Ga. L. 1998, p. 1064, § 3.

[15] See *Caldwell v. State Farm &c. Ins. Co.*, 192 Ga. App. 419, 421 (2) (385 SE2d 97) (1989) (no requirement that insurer show prejudice from failure to receive notice where prompt notice was valid condition precedent to coverage).

[16] See *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 166 (268 SE2d 676) (1980) (holding that 30-day reporting requirement was enforceable).

[17] See *Great Southwest &c. Ins. Co. v. Sprinkler Contractors*, 168 Ga. App. 104, 105 (308 SE2d 204) (1983) (conditions precedent may be " 'waived by conduct inconsistent with an intention to enforce strict compliance with the condition, by which the insured is led to believe the insurer does not intend to require such strict compliance' ").

[18] See *Caldwell*, supra (affirming summary judgment to insurer due to insured's failure to comply with notice provision).

DECIDED MARCH 13, 2000 —
RECONSIDERATION DENIED MARCH 30, 2000 — 

*Charles A. Gower,* for appellant.
*Willis, McKenzie & Long, Edward L. Long, Jr.,* for appellee.