A02A2058. PAYNE et al. v. MIDDLESEX INSURANCE COMPANY.
(578 SE2d 470)

ANDREWS, Presiding Judge.

Phillip Payne, as surviving spouse of his wife and on behalf of his two minor daughters, appeals from the trial court's grant of summary judgment to Middlesex Insurance Company finding that $40,000 was the limit of uninsured motorist coverage available under Payne's Middlesex Plain Talk Car Policy.

On an appeal from a grant of summary judgment, we review the evidence de novo and view that evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Applying that standard, summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

On May 17, 1997, Payne's wife was killed and his daughters injured when they were struck by a truck driven by Gregg, Jr. while they were walking or riding horseback along a county road. The damages sought against Gregg, Jr. exceeded his liability policy limits, and Payne claimed coverage under his Middlesex uninsured/underinsured motorist coverage. In Payne's suit against Gregg, Jr., Middlesex, as the uninsured carrier, filed a counterclaim seeking a declaratory judgment that its coverage was limited to $40,000.[1] The trial court granted Middlesex's motion for summary judgment on this issue.

Payne obtained the policy in 1994, and it renewed every six months. The Declarations Page of the policy reflects, in pertinent part, that:

> We insure you only for those coverages or groups of coverages you've purchased. You've purchased only those for which both a limit of liability and a specific premium charge

---

[1] *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 169 (268 SE2d 676) (1980).

are shown. The limit of liability for each coverage is shown below subject to the terms of the policy.

| COVERAGE | LIMIT OF LIABILITY | | PREMIUM CHARGES CAR A | CAR B |
|---|---|---|---|---|
| LIABILITY | $500,000 | | 125.97 | 157.46 |
| UNINSURED MOTORIST | EACH PERSON | EACH ACCIDENT | | |
| BODILY INJURY | $40,000 | $40,000 | 27.62 | 27.62 |
| PROPERTY DAMAGE LESS | $250 DED | $40,000 | . | |
| MEDICAL PAYMENTS | $5,000 EACH PERSON | | 20.03 | 25.03 |
| $10,000 WITH FASTENED SEAT BELTS | | | | |
| DEATH BENEFIT | $1,000 PER INSURED FAMILY MEMBER | | | |
| COMPREHENSIVE | ACV LESS | $250 DEDUCTIBLE | 49.71 | |
| COMPREHENSIVE | ACV LESS | $250 DEDUCTIBLE | | 59.93 |
| ROAD SERVICE | UP TO $75 | | 1.70 | 1.70 |
| COLLISION | ACV LESS | $500 DEDUCTIBLE | 117.99 | |
| COLLISION | ACV LESS | $500 DEDUCTIBLE | | 146.05 |
| RENTAL REIMBURSEMENT | $15 PER DAY/$450 TOTAL | | 4.25 | 4.25 |
| | TOTAL PREMIUM PER CAR | | 347.27 | 422.04 |

Payne contends that he read only the Declarations Page of this policy and that, based on conversations with Bush, his insurance agent, he believed that he had increased his uninsured motorist coverage to $500,000. He further argues that the policy is ambiguous regarding this issue because, reading up and down, he interpreted the Declarations Page as providing $500,000 liability for uninsured motorist coverage.

An insurance policy is a contract, and "(p)arties to a contract are presumed to have read their provisions and to have understood the contents. One who can read, must read, for he is bound by his contracts." (Citations and punctuation omitted.) *O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 382 (3) (461 SE2d 311) (1995).

*Swyters v. Motorola Employees Credit Union*, 244 Ga. App. 356, 358 (1) (a) (535 SE2d 508) (2000). See, e.g., *Parris & Son, Inc. v. Campbell*, 128 Ga. App. 165, 172-174 (13) (196 SE2d 334) (1973).

An insurance contract is governed by the ordinary rules of construction, and the whole policy must be considered together to determine its intent. *Progressive &c. Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992); *Calabro v. Liberty Mut. Ins. Co.*, 253 Ga. App. 96, 97 (557 SE2d 427) (2001). Therefore, we consider the whole policy as written to determine its coverage. Any alleged oral representations made by the agent cannot change the coverage provided by the written contract. *Swyters*, supra at 358 (1).

Here, as concluded by the trial court, there is no ambiguity in the policy and it provides $40,000 in uninsured motorist coverage. The first page of the Plain Talk Car Policy lists separately each type

of insurance provided with a reference to the page of the policy where the coverage is more fully set out. The types of coverage listed are: liability insurance, medical expense insurance, uninsured motorist insurance, collision insurance, comprehensive insurance, rental expense insurance, auto total disability insurance, and auto accidental death indemnity insurance. Read together with the Declarations Page, the policy shows that Payne had all coverages except the auto total disability insurance. Following the first page, the policy contains a separate section for each type of coverage, set off by bold type and double lines.

Despite these indicators that liability and uninsured motorist coverages are different types of insurance for different risks, Payne argues that placement of "liability" above "uninsured motorist" on the Declarations Page created an ambiguity.

> But ambiguity is not to be created by lifting a clause or portion of the contract out of context (*Midland National Ins. Co. v. Wright*, 117 Ga. App. 208 (1) (160 SE2d 262) [(1968)]), nor are we to call forth doubt or make hypercritical constructions. *New York Life Ins. Co. v. Thompson*, 45 Ga. App. 638 (165 SE 847) [(1932)]. The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. *Maddox v. Life & Cas. Ins. Co.*, 79 Ga. App. 164, 174 (53 SE2d 235) [(1949)]. The language of the contract in its entirety should be given a reasonable construction, not beyond that fairly intended within its terms. *New York Life Ins. Co. v. Thompson*, 45 Ga. App. 638, supra.

*Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579, 583 (1) (168 SE2d 171) (1969). *Manzi v. Cotton States Mut. Ins. Co.*, 243 Ga. App. 277, 280 (531 SE2d 164) (2000) (physical precedent only).

We agree with the trial court that the policy clearly provided $500,000 in liability coverage and $40,000 in uninsured motorist coverage. Such a conclusion is also supported by OCGA § 33-7-11 (a) (3),[2] which provided that:

> The coverage required under paragraph (1) of this subsection [uninsured motorist coverage] shall not be applicable where any insured named in the policy shall reject the minimum coverage in writing. However, *the insurer shall not be required to issue any coverage for any amount greater than*

---

[2] As it existed in 1997, the time of the accident.

*the minimum coverage unless the insured shall request in writing such higher limits.* The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer.

(Emphasis supplied.)

Payne acknowledged that he had not requested any such increase in writing. Therefore, Middlesex was not required to provide any such increase. See *Jones v. Ga. Farm &c. Ins. Co.*, 248 Ga. App. 394, 397 (546 SE2d 791) (2001); *Merastar Ins. Co. v. Wheat*, 220 Ga. App. 695, 697 (469 SE2d 882) (1996).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED FEBRUARY 4, 2003 —
RECONSIDERATION DENIED FEBRUARY 26, 2003 — 

*Paul S. Weiner,* for appellants.

*Eason, Kennedy & Associates, Richard B. Eason, Jr., Carolyn J. Kennedy,* for appellee.