**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 30, 2016**

# In the Court of Appeals of Georgia

A16A0518. PROGRESSIVE MOUNTAIN INSURANCE CO. v.    PE-022
 BISHOP

PETERSON, Judge.

Progressive Mountain Insurance Company ("Progressive") appeals from the denial of its motion for summary judgment in this coverage dispute with its insured, James Bishop. The trial court held that there was a jury question as to the sufficiency of Bishop's excuse for delay in notifying Progressive about a motor vehicle accident in which he was injured. Progressive argues that the trial court erred by failing to consider the entire body of relevant case law on insurance contracts and by failing to recognize that (1) the prompt notice provision in Bishop's policy created a condition precedent to coverage; (2) Bishop's failure to notify Progressive of the accident until 10 months and 25 days after it occurred was unreasonable as a matter of law and

thereby foreclosed coverage; (3) Bishop's excuse for the delay in notice was unjustifiable; and (4) the excuse Bishop offered in an affidavit was contradicted by his later deposition testimony. These related enumerations of error relate to the same ultimate question in this appeal: Did Progressive show as a matter of law that Bishop failed to give notice "promptly" under his policy with the insurance company such that coverage was foreclosed? Answering that question in the negative, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56(c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, Bishop was injured in a motor vehicle collision on December 12, 2012. At the time of the collision, Bishop was the named insured of a Progressive motor vehicle policy that provided for $500,000 in uninsured/underinsured motorist ("UM") coverage. The policy provided:

> For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. You or the person seeking coverage must provide us with all accident/loss information including

2

time, place, and how the accident or loss happened. You or the person seeking coverage must also obtain and provide us the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

Bishop was treated for his injuries, initially receiving trigger point injections and epidurals. Following the collision, he was in contact with the at-fault driver's insurance company and was aware that there was liability coverage to cover his claim. On October 17, 2013, he hired an attorney. Through counsel, he gave notice of the accident to Progressive on November 6, 2013. Bishop underwent surgery related to his injuries in December 2014.

In both an affidavit and in his deposition, Bishop offered explanations for the delay in giving notice to Progressive. In the April 2015 affidavit, Bishop said he had not anticipated that his claim would create exposure to his UM coverage until about October 2013. He said he had hoped in May 2013 that his treatment would conclude soon, but his pain persisted and worsened. He contacted counsel after he realized his injuries were more serious than expected and his medical bills began to increase. At his deposition given a few weeks after he signed the affidavit, he reaffirmed that he initially did not think his injuries were serious enough to warrant notifying

Progressive of the accident. Bishop acknowledged in his deposition that he had never read his policy with Progressive and was not aware that it required him to notify Progressive of any motor vehicle accident over which he sought coverage.

After Bishop filed a lawsuit over the accident against the other driver, Progressive filed an answer in its own name, seeking dismissal of any claims against it and making a cross-claim against the defendant.[1] Progressive later moved for summary judgment on the ground that Bishop failed to report the accident promptly to the insurance company. The trial court denied the motion after a hearing, saying Bishop's declaration that he was initially unaware of the severity of his injuries and evidence that Bishop gave notice to Progressive soon after seeking legal representation made the case one for a jury. The trial court granted a certificate of immediate review, and we granted Progressive's application for interlocutory appeal.

1. Progressive argues that the trial court failed to consider that the notice provision found in Bishop's policy is a condition precedent to coverage. When possible, we construe insurance policies to provide coverage, so as to advance the benefits intended to be accomplished by such policies. *See Plantation Pipe Line Co.*

---

[1] Although Bishop's complaint is not included in the record on appeal, it does not appear that Bishop sued Progressive directly.

4

*v. Stonewall Ins. Co.*, 335 Ga. App. 302, 310 (2) (780 SE2d 501) (2015). However, "a forfeiture of insurance coverage may result when an insured fails to satisfy a condition precedent to coverage under the contract." *Id.* In particular, an insured that cannot demonstrate justification for failure to comply with a notice provision that is expressly made a condition precedent to coverage is not entitled to either a defense or coverage, even if the insurer does not show actual harm from a delay in notice. *Id.* at 310-11 (2). "[C]onversely, where a notice provision is *not* expressly made a condition precedent to coverage of the insurance contract, an insured's failure to comply with the notice provision will result in a forfeiture of coverage only if the insurer demonstrates that it was prejudiced by the insured's failure." *Id.* at 311 (2) (emphasis in original).

"[T]he general rule is that a notice provision in an insurance policy is only considered a condition precedent to coverage if it expressly states that a failure to provide such notice will result in a forfeiture of the insured's rights or uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent." *Id.* at 312 (2) (citation and punctuation omitted). Policy language that merely requires the insured to give notice of a particular event does not by itself create a condition precedent. *Id.* A general provision that no action will lie

5

against the insurer unless the insured has fully complied with the terms of the policy will suffice to create a condition precedent. *See Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. 12, 14 (703 SE2d 436) (2010) (noting policies at issue provided that "[t]here is no right of action against" the insurance company "until all the terms of this policy have been met"); *see also Plantation Pipe Line Co.*, 335 Ga. App. at 312 (2) n.14 (citing cases).

Bishop's policy contained a general provision requiring his full compliance with the policy's terms: "We may not be sued unless there is full compliance with all the terms of this policy." Progressive argues that the notice provision in Bishop's policy creates a condition precedent to coverage, particularly in the light of that general requirement that the insured must comply fully with the policy's terms before the insurer may be sued. We agree, as the policy predicated coverage on compliance with all the terms of the policy, which of course includes the notice provision. *See Barclay v. Stephenson*, Nos. A16A0318 - A16A0321, 2016 WL 3208744, at *6, 2016 Ga. App. LEXIS 336, at *15-16 (3) (b) (Ga. Ct. App. June 9, 2016) (notice provision precondition to coverage, given provision that "[n]o action shall be brought against" the insurer "unless an insured has complied with the policy provisions"); *Lankford*, 307 Ga. App. at 14 (notice provision precondition to coverage in the light of

6

provision that "[t]here is no right of action against" insurer "until all the terms of this policy have been met").[2] In order to obtain coverage under his policy, therefore, Bishop must show that he complied with the notice provision or demonstrate justification for failing to do so. *See Plantation Pipe Line Co.*, 335 Ga. App. at 310-11 (2).

2. Progressive argues that the nearly 11-month delay in Bishop giving notice of the accident was unreasonable as a matter of law and therefore foreclosed coverage. We disagree. "Under Georgia law, whether an insured gave an insurer timely notice of an event or occurrence under a policy generally is a question for the factfinder." *Plantation Pipe Line Co.*, 335 Ga. App. at 306 (1). An insured may be able to present justification for delay in giving notice, and whether that justification was sufficient is generally a fact-based inquiry for a jury. *Id.* "Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice

---

[2] In so concluding, we do not mean to suggest, as Progressive does, that the trial court erred. Although Progressive complains that the trial court failed to recognize that the notice provision was a condition precedent to coverage, the trial court's ruling did not turn on any failure by the insurance company to show prejudice. The trial court therefore appears to have determined implicitly that the notice provision is a condition precedent.

7

of an occurrence to his insurer unjustified and unreasonable as a matter of law." *Id.* (citation omitted).

In cases in which a policy's notice provision gives no specific time frame, there is no bright-line rule on how much delay is too much. We have held that a delay as long as or longer than that involved in this case presents a question for a jury. *See Rucker v. Allstate Ins. Co.*, 194 Ga. App. 407, 407-08 (390 SE2d 642) (1990) (delay of nearly one year; construing provision that said insurer must be notified "promptly")[3]; *Sands v. Grain Dealers Mut. Ins. Co.*, 154 Ga. App. 720, 721 (270 SE2d 8) (1980) (11-month delay; construing provision that required notice be given

---

[3] Progressive correctly notes that, soon after deciding *Rucker*, we said in a whole court decision that the *Rucker* court never should have considered the defense of lack of notice, because that case involved coverage for a claim by a third party, and lack of notice of an accident is not a defense available to an insurer in such a scenario. *See Ginn v. State Farm Mut. Auto. Ins. Co.*, 196 Ga. App. 640, 642 (396 SE2d 582) (1990) (whole court); *see also Cotton States Mut. Ins. Co. v. Phillips*, 256 Ga. App. 70, 71 (567 SE2d 719) (2002) (lack of notice exclusion enforceable against a third party injured by insured when the injured third party has access to other insurance funds). But we have never said that *Rucker*'s analysis of the issue that it did address was error. Moreover, our reliance on *Rucker* is not to suggest that by itself that decision dictates the outcome of this case. Rather, the fact-based question presented here calls upon us to consider our prior decisions as data points on a scatter plot, and we find *Rucker* to be a helpful such data point.

8

"as soon as practicable")[4]; *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa*, 128 Ga. App. 196, 199 (2) (196 SE2d 167) (1973) (19-month delay; applying "as soon as practicable" provision). We also have held that a four-month delay was unreasonable as a matter of law. *See Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 716-18 (1) (209 SE2d 6 (1974) (reversing trial judge's rejection of insurance company's bid for declaratory judgment based on provision that required notice be given "as soon as practicable").

Here, Bishop has presented evidence that he did not give notice to Progressive sooner because he did not realize the extent of his injuries and thought the other driver's insurance would be sufficient to cover them. As in *Rucker*, where we found that the insured's ignorance of the extent of injuries to a child hit while riding a bicycle could excuse a delay in notice, *see Rucker*, 194 Ga. App. at 408, a jury might well find this to be a sufficient justification. Although the record is unclear on this

___

[4] It seems appropriate to rely on our precedent construing provisions that require notice be given "as soon as practicable" or similar language in this case involving a provision requiring that notice be given "promptly." The word "promptly" essentially means to do something as soon as possible. *See* Webster's New Collegiate Dictionary 942 (9th ed. 1991) (defining "prompt" as "being ready and quick to act as occasion demands" and "performed readily or immediately"); *see also Certified Indem. Co. v. Thun*, 165 Colo. 354, 359 (439 P2d 28) (1968) (equating policies that require notice to be given "as soon as practicable" or use terms such as "immediate," "prompt," "forthwith," or "within a reasonable time").

9

point, the evidence suggests that Bishop may have had some hidden injury as a result of the car accident, the extent of which was not immediately apparent.

This is unlike *Manzi v. Cotton States Mut. Ins. Co.*, 243 Ga. App. 277 (531 SE2d 164) (2000) (physical precedent only), in which we found that a provision that requires notice be given within 60 days is triggered at the time of an accident, irrespective of when an insured seeking uninsured motorist coverage discovers that a tortfeasor is uninsured. For one thing, Bishop's policy did not contain a time certain for giving notice, merely requiring him to report accidents "promptly." Moreover, the existence of another driver's insurance generally may be determined quickly with some degree of diligence. The extent of a plaintiff's injuries — which may determine whether other available insurance is adequate — may take considerable time to reveal itself.

Our decision in *Lankford* also is distinguishable. In that case, the plaintiff's employer, whose car the plaintiff had been driving at the time of the accident, sought and received monies under the other driver's liability policy. *Lankford*, 307 Ga. App. at 12-13. The plaintiff, however, did not give his insurer written notice that he was seeking uninsured motorist coverage until he filed a lawsuit — nearly two years after the accident, and more than a year after he underwent surgery in connection with the

10

injuries he received in the accident and his attorney requested and received disclosure of the other driver's policy limits. *Id.* at 13. We concluded that the plaintiff did not provide notice "as soon as reasonably possible" as required by his policy, saying the required notice was to be given as soon as possible after the accident, not as soon as possible after the other driver's coverage was exhausted or the plaintiff became concerned that his losses might exceed the other driver's policy limits. *Id.* at 14. However, we also relied on case law to the effect that a delay of two years was unreasonable as a matter of law, acknowledging that the notice requirement in the plaintiff's policy "affords some leeway," just not unlimited leeway. *Id.* at 15 (citation and punctuation omitted). Here, the delay was less than 11 months, and Bishop provided notice more than a year *before* undergoing surgery for his injuries. We cannot say that *Lankford* demands a finding that the delay in Bishop giving notice was unreasonable as a matter of law.

Progressive argues that Bishop's initial failure to recognize the severity of his injuries cannot justify his delay in giving notice because an insured cannot rely on his own subjective beliefs or conclusions as an excuse. Progressive cites cases with a variety of factual scenarios for the proposition that Bishop's justification is not a valid one. *See Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-17 (1) (562 SE2d

11

267) (2002) (ignorance of policy does not justify nearly one-year delay in giving notice); *Snow v. Atlanta Int'l Ins. Co.*, 182 Ga. App. 1 (354 SE2d 644) (1987) (ignorance of policy does not excuse 10-month delay in giving notice); *Int'l Indemnity Co. v. Smith*, 178 Ga. App. 4, 5 (1) (342 SE2d 4) (1986) (52-month delay unreasonable as a matter of law and not justified by insured's illiteracy); *Bituminous Cas. Co.*, 132 Ga. App. at 717 (1) (insured did not attempt to show anything that prevented it from giving notice sooner than four months from time of accident); *Edwards v. Fidelity & Cas. Co. of New York*, 129 Ga. App. 306, 307 (1) (199 SE2d 570) (1973) (five-month delay in giving notice of accident involving third party's fall from fire escape connected to building owned by insured not justified by insured's arguments that report of accident was hearsay); *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 120 Ga. App. 697, 706-07 (3) (172 SE2d 159) (1969) (that plaintiff misplaced the policy did not excuse it from complying with 60-day proof of loss requirement). However, none of these factual scenarios is similar to that presented by this case and thus none counsels us to find as a matter of law that Bishop's delay of notice was unreasonable. As discussed above, *Rucker*, in which we said a lack of evidence that the insured was aware of the extent of injuries to a child hit by a car justified a one-year delay in giving notice to the insurance company, is more

12

analogous. *See Rucker*, 194 Ga. App. at 408. Bishop arguably offers an even better excuse, given that he presented affirmative testimony that he thought his treatment would conclude much sooner, whereas a collision between a car and a child on a bike would normally prompt a driver to exercise some diligence in discerning the level of the injury to the child. *Lankford*, in which we said that a two-year delay could not be justified by a delay in the insured's awareness that he might need to utilize uninsured motorist coverage, also presents analogous facts. *Lankford*, 307 Ga. App. at 16. But, again, the significant difference in the length of delay involved distinguishes that case from this one.

Finally, Progressive argues that Bishop's explanation that he initially did not recognize the extent of his injuries cannot justify the delay in giving notice because he later contradicted it. In his affidavit, Bishop said that he initially had not anticipated that his claim would create exposure to his uninsured motorist coverage but contacted counsel after he realized that his injuries were more serious. At his deposition a few weeks later, he reaffirmed that explanation but also said that he had never read his policy and was not aware of its notice requirement. Progressive correctly points out that, when a party acts as his own witness, a trial judge considering a motion for summary judgment is not to consider any of that witness'

13

testimony that is self-contradictory, unless a reasonable explanation for the contradiction is given. *See Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000). However, the testimony cited by Progressive is not self-contradictory. Bishop acknowledged not reading the policy and not being aware of the prompt notice requirement. But Bishop did *not* testify that his failure to provide notice was due to a belief that the policy did not require notice. And the record contains no undisputed facts establishing such a belief. Instead, Bishop testified that he did not provide such notice sooner because he initially underappreciated the extent of his loss. This testimony does not conflict with his lack of knowledge of the policy's precise terms. Therefore, the trial court did not err in considering Bishop's explanation that he initially was unaware of the extent of his injuries.[5]

---

[5] In a motion for reconsideration, Progressive also argues that we disregarded precedent establishing that a party is charged with knowing the contents of his contract, contending that because Bishop did not read his policy, his failure to notify Progressive was not justifiable as a matter of law. These arguments are somewhat in tension, however. It is true that one who signs a contract, including an insurance contract, is presumed to know its contents, and the law requires more than mere ignorance of the contract to avoid its terms. *Int'l Indemnity Co.*, 178 Ga. App. at 5 (1). However, the logical corollary of this proposition is that an insured's knowledge of the policy terms or lack thereof is irrelevant, not dispositive. *Int'l Indemnity Co.*, cited by Progressive, is illustrative. In that case, we held that an insured's illiteracy — "in and of itself" — did not excuse his failure to notify his insurer of an injury "as soon as practicable," as required by his policy. *Id.* at 5 (1). Rather than concluding that the insured's ignorance of the policy terms itself mandated a conclusion that the

We recognize that our jurisprudence on the question of what constitutes sufficiently prompt notice under an insurance contract like Bishop's is not easily harmonized. Indeed, some of our prior decisions are difficult to reconcile with each other, as is not uncommon in an area that calls for a fact-specific inquiry. And we are mindful of the critical importance of enforcing contracts as written; a legal system that does not undermines civilization itself.

But Progressive's problem here is a direct result of the language it chose to use. Whether an insured has provided notice "promptly" is an inherently fact-specific question of the kind we leave juries to answer. If insurance companies wish greater certainty, they might consider using different, less flexible contractual language that establishes precise deadlines, such as the 60-day provision in *Manzi*. In the absence of such contractual precision, the fundamental starting point for our analysis is that generally a jury is to decide whether an insured has presented adequate justification to render delayed notice nevertheless sufficiently "prompt." *See Plantation Pipe Line Co.*, 335 Ga. App. at 306 (1). Although the facts and circumstances of an individual

delay in giving notice was unjustified, we went on to analyze separately (albeit briefly) whether the 52-month delay was unreasonable as a matter of law, concluding that the answer was yes given that the long delay was unexcused. *Id.* Progressive's argument that Bishop's failure to read the policy means that the insurance company wins the case is not supported by law.

15

case may sometimes make such a delay unjustified as a matter of law, *see id.*, we cannot say on this record that this is such a case.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*