[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10264
_____

D.C. Docket No. 4:15-cv-00053-CDL

THE GRAND RESERVE OF COLUMBUS, LLC,

Plaintiff-Appellee,

versus

PROPERTY-OWNERS INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 4, 2018)

Before WILLIAM PRYOR, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Insurer Property-Owners Insurance Company ("Property-Owners") appeals

from a jury verdict against it.  The jury determined that a large number of roofs at

residential building complex The Grand Reserve of Columbus, LLC ("Grand Reserve") had been damaged by a hail storm, for which Property-Owners was responsible under its policy with Grand Reserve.  On appeal, Property-Owners argues that the district court abused its discretion when it allowed insured Grand Reserve's expert to testify, allowed the expert to offer undisclosed opinions after Grand Reserve rested, and allowed the jury to speculate about the amount of damages.  Property-Owners also argues that the district court erred when it concluded that the timeliness of Grand Reserve's notice of loss was properly decided by the jury.

Property-Owners argues that the district court abdicated its gatekeeping role by not deciding whether the testimony of Grand Reserve's expert, Dansby, satisfied Daubert before the trial.  In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), the Supreme Court set the standard for admission of expert testimony under Federal Rule of Evidence 702.  Under Daubert, the district court is to act as a "gatekeeper to insure that speculative and unreliable opinions do not reach the jury."  McClain v. Metabolife International, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005)(citing Daubert, 590 U.S. at 589 n.7, 113 S. Ct. at 2795 n.7).  The district court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the

2

facts in issue." Daubert, 590 U.S. at 592-933, 113 S. Ct. at 2796.  In McClain, we held that the district court abdicated its gatekeeper role when it held a Daubert hearing but stated that it was not qualified to determine if the experts' testimony was reliable and well-founded.  401 F.3d at 1238.

Here, the district court acknowledged its gatekeeping function and then stated that it was going to have the plaintiff lay its foundation during direct examination.  Only then would the court decide if Dansby's testimony was admissible under Rule 702.  The court performed its gatekeeping function in front of the jury: Grand Reserve presented Dansby and his credentials and methodology on direct and then Property-Owners cross-examined Dansby as to both.  The court then ruled that Dansby was qualified to provide an expert opinion as to the cause of the roof damage at Grand Reserve.  Property-Owners cites no authority indicating that the Daubert inquiry must be conducted pre-trial.[1]  We hold that the district court did not abuse its discretion, and did not abdicate its gatekeeper role.

Property-Owners also argues that the district court erred when it permitted Dansby to testify about damages after only qualifying him to testify about causation, but Property-Owners failed to preserve this objection at trial.   When

---

[1]    We need not address the wisdom of conducting the inquiry in the presence of the jury.  In this case, the inquiry was conducted and the district court's decision with respect to Dansby's qualifications to testify about causation was made before any substantive testimony in that regard was heard by the jury.

Grand Reserve sought to introduce Dansby's expert report, the trial court asked Property-Owners if it had an objection to Dansby's methodology as to the damages, and Property-Owners stated that it did not. Property-Owners thus has waived this argument. SEC v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014).

We also reject as wholly without merit Property-Owners' argument that Dansby was not qualified. Dansby has worked in this field for 26 years and testified that he has examined over a thousand roofs. He even cited a specific hail storm in Rome several years ago with respect to which he spent a significant amount of time assessing the damages for other insurance companies. He described in detail the damage throughout the Columbus area from the 2013 storm (which was apparently the worst in years). There is no question that this type of experience qualified Dansby as an expert witness.

We also reject Property-Owners' argument that Dansby's methodology was unreliable. At trial, Dansby described in some detail his methodology, which was the industry standard. One part of it involved creating a sample, usually 10 x 10 feet, for each exposure (i.e. northfacing, southfacing). He would then examine that sample to determine if the damage was created by hail, a loosened nail, the roofer's shoe, or something else. Dansby testified that Property Owner's manual specified using the same test. Dansby testified that he looked at all of the two-story buildings, neither of two three-story buildings, and half of the one-story buildings,

4

focusing on the one-story buildings on the outside boundaries of the property.  He examined all but five or six of the fifty-five buildings.  He described seeing hail damage that was consistent from roof to roof across the property.  Given his testimony about how extensive and severe the 2013 storm was, and how consistent the hail damage from roof to roof was, it was logical to take a sample of the roofs located next to each other, in buildings facing the same direction and with the same slope, to determine the overall damage.[2]  Similarly, his testimony regarding the Atlas Chalet shingle did not undermine his credentials: he testified that although he was not familiar with the model before this case, he researched it, learned its defect, and then excluded damage of the sort associated with it in his calculations.[3]

Property Owners argues that the district court abused its discretion when it allowed Dansby to offer new evidence of damages after Grand Reserve stated that it rested its case, but a trial "judge has broad discretion to reopen a case to accept additional evidence, and his decision will not be overturned absent an abuse of that discretion," Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit, 50 F.3d 908, 917 (11th Cir. 1995), and the district court did not abuse its discretion here.  Here, Dansby's original damages calculations were in the form of replacement value while the policy, as Property-Owners knew,

---

[2]   Moreover, he testified that such extrapolation was common in the industry.
[3]   Property-Owners' other challenges to Dansby's testimony are rejected without need for discussion.

required actual cash value.  Actual cash value is determined simply by subtracting depreciation from the figure for replacement value. Calculation of the depreciation figure was readily apparent because the actual age of each building was reflected on the declarations page of the policy.   That calculation and the subtraction thereof from the replacement value to determine actual cash value was a common practice for Property-Owners adjusters. And we have upheld the decision of district court to allow a plaintiff to reopen its case and introduce new evidence to prove an element of a claim in similar circumstances. See Lundgren v. McDaniel, 814 F.2d 600, 607 (11th Cir. 1987); United States v. One 1972 44' Striker, Bonanza, 753 F.2d 867, 869 (11th Cir. 1985).

Property-Owners argues that it was entitled to judgment as a matter of law because Grand Reserve failed to introduce sufficient evidence of damages, but we disagree. Grand Reserve was required to prove "'resultant damages'" as an element of its claim of breach of contract under Georgia law. See Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (quoting Norton v. Budget Rent A Car Sys., Inc., 307 Ga. App. 501, 705 S.E.2d 305, 306 (2010)). And, under Federal Rule of Civil Procedure 50, a district court should grant a motion for judgment as a matter of law if the evidence is not "'legally sufficient'" to support a contrary verdict. McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Fed. R. Civ. P. 50). Property-Owners

6

argues that Dansby offered "at best" speculative evidence of damages, but its attacks on Danby's credibility and the accuracy of his estimate are misplaced because "we have stressed" that "'[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses.'" McGinnis, 817 F.3d at 1254 (alterations in original) (quoting Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002)).

Finally, Property-Owners argues that Grand Reserve did not provide prompt notice of loss as required by the policy and thus should not recover. Here, a strong wind and hail storm hit Columbus on March 18, 2013, and there was uncontroverted evidence of the extensive damage it caused to metal roof parts, patio screens, and heating and air conditioning units at every building in the complex. In the months after the storm, Grand Reserve began receiving some reports of leaking ceilings. Two work orders, one in May and one in June, involved roof repairs, and the technician's notes report repairs to wind- and hail-damaged shingles. However, the two work orders showed hail damage only to a few shingles each. There was testimony that such damage to a few shingles would not give alert to broader damage. Moreover, given that Grand Reserve receives approximately 2500 work orders per year, the isolated reports did not raise any flags. Instead, in December 2013, the complex's roofer replaced six to eight bundles of shingles – a lot more than other repairs. He then notified the complex's

7

manager of the scope of the damage.  The manager alerted owner Steven Corbett

that hail damage could be widespread.  Shortly thereafter, Corbett notified

Property-Owners.  And the jury heard evidence that Property-Owners did not

object to the delay after received it Grand Reserve's notice of the claim and that

Property-Owners made a partial payment on the claim.

"An insured that cannot demonstrate justification for failure to comply with

a notice provision that is expressly made a condition precedent to coverage is not

entitled to either a defense or coverage, even if the insurer does not show actual

harm from a delay in notice." Progressive Mountain Ins. Co. v. Bishop, 338

Ga.App. 115, 790 S.E.2d 91, 94 (2016) (citing Plantation Pipe Line Co. v.

Stonewall Ins. Co., 335 Ga.App. 302, 310-11, 780 S.E.2d 501, 509-510 (2015)).

Under Georgia law, the questions of whether the insured gave timely notice and

whether the delay was justified are for the factfinder. Id. at 95.  In Bishop, the

court held that there is no bright line rule about the number of months. Id.

Looking at the facts, the court held that the eleventh-month delay was not

unreasonable as a matter of law, where the insured delayed telling his insurance

company about the accident because he did not realize the severity of his injuries.

Id. at 96.

Under these facts, the question of whether the ten-month delay was

reasonable was one for the jury to decide.  The jury could reasonably have credited

the testimony that the two work orders which revealed hail damage to a few shingles would not have alerted Grand Reserve to broader hail damage, especially in light of the great number and frequency of routine work orders. And that Property-Owners failed to mention the delay long after it received notice of Grand Reserve's claim undermines its argument that "a reasonable jury would not have a legally sufficient evidentiary basis to find" that the notice was not timely as a matter of law. Fed. R. Civ. P. 50(a)(1).  Thus, the district court did not err when it denied Property-Owners' motion for judgment as a matter of law on this issue.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.