[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12918

Non-Argument Calendar

_____

SIASIM COLUMBIA, LLC,

Plaintiff-Appellant,

*versus*

SCOTTSDALE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:19-cv-04568-ELR

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant SiaSim Columbia, LLC ("SiaSim") appeals from the district court's grant of summary judgment to Scottsdale Insurance Co. ("Scottsdale"). This appeal concerns whether SiaSim breached the notice provision in its insurance contract with Scottsdale by waiting six months to file a claim for damage to its property caused by a storm. For the following reasons, we affirm.

## I.

The facts underlying this case are straightforward. SiaSim owns a four-unit commercial property ("the property") that Scottsdale insured from October 23, 2016 to October 23, 2017. The insurance policy was issued pursuant to Georgia law, and the parties agree that Georgia insurance law applies to this case. The insurance policy, in a section titled "Loss Conditions," said that

SiaSim had a duty to "[g]ive [Scottsdale] prompt notice of the loss or damage" in the event that loss or damage occurred.

On September 11, 2017, a storm allegedly damaged the property. According to Junaid Virani ("Virani"), SiaSim's owner and corporate representative, within a week of the storm, one of SiaSim's tenants reported "multiple roof leaks coming in" and "water seeping into the building." At his deposition, Virani testified that he went to the property to inspect it multiple times. He affirmed that he saw during his first inspection "standing water on the floor," water "[c]oming from the roof," and "multiple [water] spots on the ceiling." He said that two of the property's other units were "starting to" flood at that time, and that those units "were eventually flooded to the point where all the flooring, ceiling, electrical, lights, everything had to be redone. Mold. It was a mess."

After his first inspection, Virani called a maintenance contractor from Gold Peak Construction to look at the property. This occurred "within a month" of the storm. After his inspection, the maintenance contractor "made some suggestions" "on what needed to be done," such as fixing "roof damage" and the flooring. Virani described the contractor's recommendations as follows:

> Just general stuff that eventually had to be fixed like flooring was -- had water in it, so it started to come up. Ceiling tiles had to be replaced. All the electrical wires had to be rerun. The lights had to [be]

rechanged, and then the roof was supposed to be fixed, which was done temporarily.

Three tenants "left because it got so bad" at some point during the six months after the September 11, 2017 storm. Later in his deposition, Virani said that those three units were "completely messed up": "It was so much mold in there that you just couldn't be there." During the six months following the storm, SiaSim did not make any repairs to the roof.

At some point in January 2018, SiaSim contacted Tristan Farrell of Premier Claims, a claims adjustment firm. After Premier Claims inspected the property, Farrell told Virani about "the extent of the roof damage and that the mold remediation, flooring, all the repairs that had to be made to take care of the situation." Farrell testified that he first inspected the property some time in March 2018. He saw "[p]unctures to the roof, lifted seams," and "areas that were clearly failing." He testified that the September 11, 2017 storm had caused this damage. He also testified that, after his initial inspection, he recommended that the "roof needed to be fully replaced" and that "[t]he interior needed to be gutted and rebuilt." From March 2018 to May 2018, Farrell conducted a total of three inspections.

SiaSim notified Scottsdale of its claim on March 26, 2018, over six months after the storm. When asked why it took six months to notify Scottsdale of the damage, Virani said, "[I]t took a lot of time to find out the extent of the damage, how bad it was. And it was multiple inspections that had to be done, and we just

didn't know how bad it was. . . . We just didn't know the extent of the damage and how much it was going to cost." Even though he had seen during his first inspection that one of the units was flooding, Virani maintained that he did not "know if it was just a patch or [if] the whole roof was messed up."

On April 25, 2018, an adjuster from Scottsdale, Steven Niederfringer, inspected the property. Based on the photographs he took of the roof, Niederfringer testified that he saw "wear-and-tear issues, cracks, things of that nature that would allow water to intrude through the roof and cause interior damages." SiaSim contends that Niederfringer verbally told Farrell during the April 25 inspection that "he was going to cover all th[e] interior remediation that needed to happen." Niederfringer says that he does not recall making these statements; rather, he says that he "always make[s] it very clear . . . that [he is] strictly on site to document damage, and [he] make[s] no determinations whatsoever in regards to coverage and do[es]n't even have access to the policy."

In September 2019, SiaSim sued Scottsdale in state court, seeking damages for Scottsdale's alleged breach of its insurance policy, and Scottsdale removed the action to federal court. Scottsdale filed a motion for summary judgment, and the district court granted that motion. The district court determined that SiaSim breached the notice provision of its insurance policy with Scottsdale, which was a condition precedent to coverage. On appeal, SiaSim argues that summary judgment was inappropriate because a genuine issue of material fact exists regarding whether

6                    Opinion of the Court                    21-12918

(1) its delay in notifying Scottsdale of the storm damage was justified, and (2) Scottsdale waived the insurance policy's notice provision.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). We view all facts and reasonable inferences in the light most favorable to the nonmoving party (*i.e.*, SiaSim). *Jurich*, 764 F.3d at 1304.

## III.

SiaSim's first argument on appeal is that a genuine issue of material fact exists as to whether its justification for its six-month delay in giving notice was reasonable. SiaSim's justification for the delay is that it initially thought that the damage to the property "was not serious enough to involve Scottsdale" and that it only

realized the full extent of the damage to the property after it performed multiple inspections.

Under Georgia law, "when an insurance policy includes a notice requirement as a condition precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage." *Forshee v. Emps. Mut. Cas. Co.*, 711 S.E.2d 28, 31 (Ga. Ct. App. 2011). The purpose of these notice requirements is

> to enable the insurer to begin immediately an investigation of the facts and circumstances for determining whether liability might be present . . . ; to get the facts while they were fresh and available in the minds of the parties and such witnesses as might be available; to obtain pictures, diagrams, etc. which might assist in showing how the occurrence happened and the extent of any physical damage done.

*Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc.*, 209 S.E.2d 6, 8–9 (Ga. Ct. App. 1974). An insurer may still be required to cover an insured's loss if the insured's failure to give timely notice was justified. An insured's failure to provide timely notice may be justified "if a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim." *Forshee*, 711 S.E.2d at 31.

SiaSim has not contested the district court's finding that complying with the notice provision in the instant insurance poli-

cy was a condition precedent to coverage.[1]  Moreover, the parties agree that SiaSim did not notify Scottsdale of the damage to the property until approximately six months after the September 11, 2017 storm.  Accordingly, the only question on appeal is whether SiaSim's six-month delay was justified.

Where the insurance policy's notice provision—as here— "gives no specific time frame, there is no bright-line rule on how much delay is too much." *Bishop*, 790 S.E.2d at 95.[2]  Instead, "[w]hether an insured gave an insurer timely notice of an event or occurrence under a policy generally is a question for the factfinder." *State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 675 S.E.2d 534, 538 (Ga. Ct. App. 2009).  An insured or insurer may be entitled to summary judgment if the delay (or justification for the delay) was reasonable or unreasonable as a matter of law. *Compare S. Guar. Ins. Co. v. Miller*, 358 S.E.2d 611, 611–12 (Ga.

---

[1] Recall that the notice provision says that SiaSim had a duty to "[g]ive [Scottsdale] prompt notice of the loss or damage" in the event that loss or damage occurred.  As the Georgia Court of Appeals has explained, "[t]he word 'promptly' essentially means to do something as soon as possible." *Progressive Mountain Ins. Co. v. Bishop*, 790 S.E.2d 91, 95 n.4 (Ga. Ct. App. 2016).

[2] For instance, the Georgia Court of Appeals has held that delays of nineteen months, one year, and eleventh months have "present[ed] a question for a jury" regarding reasonableness. *Bishop*, 790 S.E.2d at 95.  Conversely, it has also "held that a four-month delay was unreasonable as a matter of law." *Id.*

Ct. App. 1987) (holding that the insured's conclusion that an automobile collision "was not of sufficient severity to involve the insurer" was reasonable as a matter of law because the accident caused no physical injuries or property damage), with *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 231 S.E.2d 245, 249 (Ga. Ct. App. 1976) (holding that an eight-month "delay in notifying the insurer was unreasonable as a matter of law" because the insured "paid a number of the injured party's medical bills"). The Georgia Court of Appeals has outlined the following factors to consider in this inquiry:

> "[I]t is the nature and circumstances of 'the accident' or 'the incident' and the immediate conclusions an ordinarily prudent and reasonable person would draw therefrom that determine whether an insured has reasonably justified his decision not to notify the insurer." Relevant circumstances include the nature of the event, the extent to which it would appear to a reasonable person in the circumstances of the insured that injuries or property damage resulted from the event, and the apparent severity of any such injuries or damage.

*Forshee*, 711 S.E.2d at 31 (citation omitted) (quoting *Miller*, 358 S.E.2d at 612).

Turning to the case at hand, we agree with the district court that no reasonable jury could find that SiaSim's delay was justified. SiaSim's justification for its six-month delay—*i.e.,* that it did not realize the extent of the damage until multiple inspections

had been done—was unreasonable as a matter of law because the extent of the damage was obvious.  As outlined above, Virani saw during his first inspection water coming into the property from the roof and noted that two of the property's four units were "starting to" flood.  He brought in a maintenance contractor within one month of the storm, and that contractor recommended extensive repairs, including rerunning the electrical wiring and repairing the roof and the flooring (which had water in it).  Moreover, within the six months following the storm, three tenants "left because it got so bad."

At his deposition, Virani testified that "it took a lot of time to find out the extent of the damage" and that "multiple inspections . . . had to be done" because he was "not an expert," and he did not know whether the problem "was just a patch or the whole roof."  While it may be true that Virani (a non-expert) did not know the full extent of the damage to the roof, a reasonable insured likely would have notified its insurer after (a) seeing the extent of the damage to the property within a week of the storm and (b) receiving the above-described recommendations from a contractor within a month of the storm.  In other words, "an ordinarily prudent and reasonable person" would have immediately concluded based on the first inspection and the contractor's recommendation that he must notify his insurer.  *Forshee*, 711 S.E.2d at 31 (quoting *Miller*, 358 S.E.2d at 612).

Given these facts, we think a reasonable jury could not conclude that SiaSim's six-month delay in notifying Scottsdale

21-12918                Opinion of the Court                11

was justified.  Insureds, such as SiaSim, are "not required to fore-see every possible claim" that could arise from a given set of cir-cumstances.  *Guar. Nat'l Ins. Co. v. Brock*, 474 S.E.2d 46, 48 (Ga. Ct. App. 1996).  But they are "required to act reasonably under the circumstances."  *Id.*  Here, no reasonable jury could conclude that SiaSim acted reasonably: Virani saw in his first inspection ex-tensive water damage, and, within a month of the storm, a con-tractor recommended the above-described repairs.  We agree with the district court that the extent of the leaks and damage to the interior—*e.g.*, the standing water and onset of flooding—meant that "it was apparent that the damage to the roof was ex-tensive."[3]

Moreover, the policy reason for requiring notice supports our conclusion.  Insureds must promptly give their insurers notice of occurrences so the insurers can "immediately" begin their in-vestigation.  *Bituminous Cas. Corp.*, 209 S.E.2d at 8.  For exam-ple, an insurer may need to interview witnesses and the parties

---

[3] The Georgia Court of Appeals has emphasized that trial courts "must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct of the insured from the perspective of a reasonable person in the same circumstances as those in which the insured found himself."  *Forshee*, 711 S.E.2d at 32.  We do not think the district court fell prey to hindsight bi-as.  Virani performed his first inspection within a week of the storm and the contractor performed its inspection within a month of the storm.  Based on the extensive water damage at the time of the first inspection and the con-tractor's recommendations, a reasonable insured would have notified its in-surer of that damage well before six months had lapsed.

while the facts are "fresh and available in the[ir] minds" or take pictures of the damage.  *Id.*  Here, Scottsdale's adjustor was not able to inspect the property until over seven months after the storm.  Accordingly, he could not view the damage to the property as it existed shortly after the storm.  Notice requirements exist to prevent this type of extended delay.

SiaSim argues that, under Georgia law, whether it complied with the notice requirement is a fact question for the jury. *See Bishop*, 790 S.E.2d at 97 ("Whether an insured has provided notice 'promptly' is an inherently fact-specific question of the kind we leave juries to answer. . . .  [T]he fundamental starting point for our analysis is that generally a jury is to decide whether an insured has presented adequate justification . . . .").  Yet Georgia law allows summary judgment in favor of insurers where the "delay in notifying the insurer was unreasonable as a matter of law." *Richmond*, 231 S.E.2d at 249.  As outlined, whether a delay is reasonable or unreasonable depends on several factors—*e.g.*, "the nature of the event, the extent to which it would appear to a reasonable person . . . that injuries or property damage resulted from the event, and the apparent severity of any such injuries or damage." *Forshee*, 711 S.E.2d at 31.  Here, the apparent severity of the property damage meant that a reasonable insured would have

concluded that it needed to notify its insurer.   Accordingly, SiaSim's six-month delay was unreasonable as a matter of law.[4]

## IV.

SiaSim's second argument on appeal is that Scottsdale waived the insurance policy's notice provision. *See State Farm Mut. Auto. Ins. Co. v. Wright*, 224 S.E.2d 796, 798 (Ga. Ct. App. 1976) ("These conditions may be . . . waived by conduct inconsistent with an intention to enforce strict compliance with the condition, by which the insured is led to believe the insurer does not intend to require such compliance."). For support, it points to Farrell's deposition where he testified that Niederfringer verbally told him that "he was going to cover all th[e] interior remediation that needed to happen."

But SiaSim raised this argument for the first time on appeal. In its answer to SiaSim's complaint, Scottsdale's fourth defense was that "[SiaSim] failed to satisfy conditions precedent to coverage." In its memorandum of law supporting its motion for summary judgment, Scottsdale argued that SiaSim's six-month delay in giving notice breached the notice provision, which was a

---

[4] The parties and district court both spend time comparing and contrasting the facts in this case to the facts in an earlier, unpublished decision from this Court. *Grand Rsrv. of Columbus, LLC v. Prop.-Owners Ins. Co.*, 721 F. App'x 886 (11th Cir. 2018). While this unpublished decision does not control our opinion, we agree with the district court that the extent of the damage here was more obvious than in *Grand Reserve*.

condition precedent to coverage. In its response, SiaSim never argued that Scottsdale waived SiaSim's duty to comply with the notice provision. Moreover, the district court never addressed (nor apparently had the opportunity to address) this argument.

We will not consider SiaSim's waiver argument because it was raised for the first time on appeal. *See Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) ("[W]e have repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991))). The rationale for this rule is "plain": "If we were to regularly address questions . . . that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

SiaSim contends that waiver is merely a new argument in favor of a claim that it raised before the district court—*i.e.*, that SiaSim did not breach the insurance policy's notice provision. *See Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments—let alone authorities. Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable." (citation omitted)). But that is not true: SiaSim argued before the district court that its six-month delay in notifying Scotts-

dale was justified and reasonable; it did not raise the issue of whether Scottsdale had waived the notice provision. The district court was unable to consider this issue or conduct any relevant fact-finding. Accordingly, we consider SiaSim's waiver argument to be a new issue on appeal rather than a new argument in favor of a previously raised issue. *Cf. Yee v. City of Escondido*, 503 U.S. 519, 534–35, 112 S. Ct. 1522, 1532 (1992) ("Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims*. They are, rather, separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking.").

For the foregoing reasons, the district court's grant of summary judgment in favor of Scottsdale is

**AFFIRMED.**